**ILLINOIS CENTRAL RAILROAD COMPANY**

v.

**Ronald L. DUPONT, et al**

**Charlie A. Price, et al**

v.

**Canadian National / Illinois Central Railroad Company, et al**

**Fern Sheridan Roshto Dupuy Connor, et al**

v.

**Canadian National / Illinois Central Railroad Company, et al**

**Ronald R. Graves**

v.

**Canadian National / Illinois Central Railroad Company, et al**

Nos. CIV.A. 00–500–D–M2, CIV.A. 00–834–D–M2, CIV.A. 01–459–D–M2, CIV.A. 01–460–D–M2.

United States District Court, M.D. Louisiana.

Dec. 4, 2001.

Sachse & Wilson, Baton Rouge, LA, for Illinois Central Railroad Company, plaintiff.

Mary Kerrigan Dennard, Morgan J. Wells, Jr., Larzelere & Picou, LLP, Metairie, LA, for Donald L. Dupont, Northfield Ins. Co., defendants.

William C. Helm, Law Offices of William C. Helm, L.L.C., Baton Rouge, LA, Maurice Blake Monrose, Karen J. King, Hurlburt, Privat & Monrose, PLC, Lafayette, LA, for Denmar Logging, Inc., defendant.

Steven David Crews, Corkern & Crews, LLC, Natchitoches, LA, for Capital City Ins. Co., Inc., defendant.

Michael K. Nowak, Kujawski & Gaerber, Belleville, IL, Philip Bohrer, Bohrer Law Firm, Baton Rouge, LA, for Rhonda Chantel Dupuy Fern, Sheridan Roshto Dupuy Connor, Brian Michael Connor, Vikki Lynn Connor, Wayne A. Connor, Jr., consolidated plaintiffs.

Floyd J. Falcon, Jr., Avant & Falcon, Baton Rouge, LA, James H. Wettermark, Burge and Wettermark, Birmingham, AL, for Ronald R. Graves, Charles A. Price, Joe Ann Price, consolidated plaintiffs.

Joseph J. Bailey, Provosty, Sadler & deLaunay, Alexandria, LA, for Underwriters Ins. Co., consolidated defendant.

Michael O. Hesse, St. Francisville, LA, for Debra Dupont.

Douglas K. Williams, Cullen J. Dupuy, Thomas Richard Temple, Jr., Breazeale,

## RULING ON MOTION FOR SUMMARY JUDGMENT

BRADY, District Judge.

This matter is before the court on a motion for summary judgment (doc. 58) filed by defendant, Underwriters Insurance Company ("Underwriters").[1] The

---

**1.** Illinois Central Railroad Company had filed a Motion to Strike the policy of insurance that was attached to Underwriters' Motion for Summary Judgment on the grounds that the insurance policy was not a sworn or certified copy. That motion is denied as moot because the court subsequently granted Underwriters' Motion for Leave to Substitute a certified

matter has been fully briefed, and there is no need for oral argument. Subject matter jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

The plaintiffs in these consolidated cases claim that they have suffered damages as the result of a collision between a logging truck and a train which occurred on June 26, 2000. The claim against Underwriters is based on an insurance policy issued by it to Denmar Logging, Inc. which is alleged by the plaintiffs to cover the truck that was involved in the accident.

## FACTUAL BACKGROUND

Denmar Logging, Inc. ("Denmar") is a Louisiana corporation engaged in the logging business. Denmar's operations include cutting timber and transporting it to various lumber mills. Denmar owns one truck, a 1998 Peterbilt tractor trailer, which is used to transport logs and pulpwood and which is covered by an automobile liability insurance policy issued by Underwriters.

Denmar also employs drivers who use their own trucks to haul timber for Denmar. Ronald Dupont was one of Denmar's drivers, and he owned a 1986 Peterbilt truck which was used to carry out his employment duties. On June 26, 2000, Denmar was conducting its logging operations at a site in Mississippi for delivery to a mill in Louisiana. Using his own truck, Dupont picked up a load of logs and pulpwood from the Mississippi site and began traveling to Louisiana on Highway 61. Before he reached his destination, he was involved in a collision with a train owned and operated by Illinois Central Railroad Company ("Illinois Central").

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the burden at trial rests on the non-movant, the movant need only demonstrate that the record lacks sufficient evidentiary support for the non-movant's case. See *Id.* The movant may do this by showing that the evidence is insufficient to prove the existence of one or more elements essential to the non-movant's case. See *Id.*

Although this court considers the evidence in the light most favorable to the non-movant, the non-movant may not merely rest on allegations set forth in the pleadings. Instead, the non-movant must show that there is a genuine issue for trial. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-movant's burden. If, once the non-movant has been given the opportunity to raise a genuine factual issue, no reasonable juror could find for the non-movant, summary judgment will be granted. See *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; see also Fed. Rule Civ. P. 56(c).

## ARGUMENTS AND APPLICABLE LAW

■ Defendant Underwriters argues that it should be dismissed from these lawsuits because the automobile insurance policy that it had issued to Denmar Logging, Inc. does not cover the truck that was involved in the accident that is the subject of these proceedings. Underwriters' insurance policy was effective from August 16, 1999 through August 16, 2000, and it provides coverage only for vehicles

copy of the insurance policy for the uncerti-        fied copy that had previously been filed.

that are specifically described or listed in the policy. Underwriters argues that the only automobile that is specifically described or listed in the insurance policy is the 1998 Peterbilt truck owned by Denmar, and that truck was not involved in this accident in any way. At the time of the accident, Dupont was driving his own truck, a 1986 Peterbilt, and Underwriters argues that its insurance policy did not provide coverage for Dupont's truck.

After carefully reviewing the insurance policy issued by Underwriters to Denmar, the court finds that the insurance policy only provides coverage for specified vehicles that are described in the policy as covered vehicles. The only automobile that is described or listed in the policy is the 1998 Peterbilt truck owned by Denmar, and that is the only automobile for which the policy provides coverage. Dupont's truck, which is the one that was involved in the accident, is not described or listed in the insurance policy, and therefore, the court finds that there is no coverage for it under the Underwriters insurance policy.

Illinois Central argues that, because Denmar was operating its logging business in interstate commerce, it was required by federal law to register with the Interstate Commerce Commission ("ICC"). Under the Motor Carrier Act of 1980, 49 U.S.C. § 13901, any motor carrier which transports passengers or property (or both) in interstate commerce must be registered with the ICC. Illinois Central argues that Denmar violated federal law because it transported logs and pulpwood from Mississippi to Louisiana without registering with the ICC.

Illinois Central also argues that Denmar was violating federal law because it failed to include in its insurance policy an endorsement which is required by ICC regulations for all motor carriers operating in interstate commerce. Pursuant to 49 C.F.R. § 387.15, Illinois Central argues that Denmar's insurance policy with Underwriters should have contained a federally mandated endorsement (the MCS–90 endorsement) which would obligate Underwriters to provide coverage for this accident, even though the truck involved in the accident was not specifically described in the Underwriters insurance policy.

The MCS–90 endorsement provides that the insurer (the company) will pay, within the liability limits of the policy, any judgment recovered against the insured (the motor carrier) for liability resulting from its negligence, regardless of whether or not each motor vehicle is specifically described in the policy. See 49 C.F.R. § 387.15. The purpose of the MCS–90 endorsement is to protect the public and to ensure that anyone injured by a negligent motor carrier is able to obtain a collectible judgment. See *T.H.E. Insurance Co. v. Larsen Intermodal Services, Inc.*, 242 F.3d 667 (5th Cir.2001). It shifts the risk that an interstate carrier will not obtain the proper insurance coverage from the motoring public to the insurer that issues a policy to that carrier; in other words, it provides a safety net to the general public. It also obligates the motor carrier to reimburse the insurer for any payments that the insurer is required to make as a result of the endorsement, and this makes certain that the ultimate loss falls on the motor carrier that failed to obtain proper insurance, rather than on the insurer. See *Id.*

In the instant case, where Denmar's insurance policy with Underwriters does not cover the logging truck that was involved in the accident, the MCS–90 endorsement would kick-in and provide coverage for any members of the public who were injured in the accident. However, Denmar's insurance policy with Underwriters does not include the MCS–90 endorsement. Illinois Central argues that this court should read

the endorsement into the policy. It argues that the only way to maintain the public policy behind the MCS–90 endorsement is to conclude that the endorsement is attached to any insurance policy providing coverage to a motor carrier operating in interstate commerce, regardless of whether the carrier failed to register with the ICC and regardless of whether the endorsement was actually included in the policy.

■ Illinois Central's argument cannot succeed because the transportation of logs and pulpwood is not governed by the Motor Carrier Act. The Motor Carrier Act applies to "transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both are transported by motor carrier between a place in a State and a place in another State." See 49 U.S.C. § 13501. Illinois Central argues that Denmar was transporting property from Mississippi to Louisiana and, therefore, was subject to the requirements of the Motor Carrier Act.

However, 49 U.S.C. § 13506 provides a list of exemptions from the requirements of the Motor Carrier Act. Specifically, it provides an exemption for "transportation by motor vehicle of agricultural or horticultural commodities (other than manufactured products thereof)." See 49 U.S.C. § 13506(a)(6). Denmar was in the business of transporting cut trees and logs to lumber mills. Trees and logs are considered to be agricultural or horticultural commodities. Furthermore, the trees and logs that Denmar was transporting were not manufactured products because they had not been transformed from their natural state.

In *East Tex Motor Freight Lines v. Frozen Food Express,* the United States Supreme Court looked at the legislative history of the Motor Carrier Act to determine the meaning of the word "manufac-

ture." See 351 U.S. 49, 76 S.Ct. 574, 100 L.Ed. 917 (1956).

> Manufacture implies a change, but every change is not a manufacture, and yet every change in an article is the result of treatment, labor, and manipulation. But something more is necessary....There must be transformation; a new and different article must emerge having a distinctive name, character, or use.

See *Id.* The trees and logs that Denmar was transporting from Mississippi to Louisiana had not been manufactured because they had not been transformed into a new product; they had only been cut for transportation.

ICC regulations give further support to the proposition that the trees and logs had not been manufactured. 49 C.F.R. § 372.115 sets out a list of agricultural or horticultural commodities that are not exempt under 49 U.S.C. § 13506(a)(6). It states:

> 49 U.S.C. § 13506(a)(6) provides an exemption from regulation for motor vehicles used in carrying ordinary livestock, fish, and unmanufactured agricultural commodities. Certain specific commodities have been statutorily determined to be non-exempt. Administrative Ruling No. 133, which is reproduced below, is a list of those commodities that are non-exempt by statute.

The regulation then goes on to list the items that are not exempt from the requirements of the Motor Carrier Act. One of those non-exempt items is "trees: sawed into lumber." The regulation does not list trees that have been cut, trees that have been debarked, trees that have had their limbs cut for transport, or any other types of trees. The regulation also does not list logs. The only kinds of trees that have been statutorily determined to be non-exempt under 49 U.S.C. § 13506(a)(6)

are trees that have been cut into lumber because they are no longer considered to be unmanufactured. The process of cutting the trees into lumber transforms them into "manufactured" commodities.

Denmar was in the business of hauling cut trees and logs that had not yet been sawed into lumber. The trees and logs that Denmar was transporting from Mississippi to Louisiana were unmanufactured agricultural or horticultural commodities, and therefore, they are exempt under 49 U.S.C. § 13506(a)(6) from the requirements of the Motor Carrier Act. The court finds that the Motor Carrier Act does not apply to Denmar's logging operations, and Denmar was not required to include the MCS–90 endorsement in its insurance policy with Underwriters.

Furthermore, even if the Motor Carrier Act was applicable, and the insurance policy should have included the MCS–90 endorsement, this court would refuse to take over the role of the legislature by reading the endorsement into the insurance policy and creating coverage where none previously existed. Although reading the MCS–90 endorsement into the insurance policy may be an effective means of enforcing the public policy behind the endorsement, this court is not authorized to do the job of Congress. Federal law imposes a $10,000 penalty on motor carriers who fail to include the MCS–90 endorsement in their insurance policies. See 49 C.F.R. § 387.17. However, Congress did not provide that the endorsement be read into the policy, and this court will not extend the law beyond what has been provided by Congress.

Therefore, this court finds that the insurance policy issued by Underwriters to Denmar does not provide coverage for the truck that was involved in this accident, and Underwriters is dismissed from these proceedings. Furthermore, the court finds that Underwriters has no duty to continue to defend the claims against Denmar. Since there is no coverage under the Underwriters insurance policy, Underwriters has no duty to defend. "Even though the duty to defend is broader than the question of liability, when in summary judgment the trial court decides as a matter of law the exclusion is applicable, meaning that there is no coverage, then of course there is no duty to defend." See *West v. Board of Comm'rs of Port of New Orleans*, 591 So.2d 1358, 1360 (La.App. 4th Cir.1991).

Accordingly, the motion for summary judgment (doc. 58) filed by defendant, Underwriters Insurance Company, is hereby GRANTED, and the claims against Underwriters Insurance Company are hereby DISMISSED.

The motion to strike (doc. 65) filed by Illinois Central Railroad Company is hereby DENIED AS MOOT.