**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No.  00-30392

---

T.H.E. INSURANCE COMPANY,

Plaintiff-Appellant,

VERSUS

LARSEN INTERMODAL SERVICES, INC.,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

March 2, 2001

Before KING, Chief Judge, and HIGGINBOTHAM and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

T.H.E. Insurance Company ("T.H.E.") appeals the ruling of the district court granting summary judgment in favor of its insured, Larsen Intermodal Services, Inc. ("Larsen") and denying T.H.E.'s cross-motion for summary judgment.  T.H.E. defended Larsen against the claims of several plaintiffs who were injured in an accident involving a 1984 White tractor leased to Larsen and driven by one of its employees.  However, T.H.E. determined that the tractor was not a covered vehicle under the Commercial Trucker's Insurance policy (the "Policy") that T.H.E. provided to Larsen.

Nevertheless, T.H.E. settled and paid the injured plaintiffs' claims as required by a federally-mandated endorsement to the Policy. The endorsement gives T.H.E. the right to seek reimbursement from Larsen for any sums paid solely by reason of the endorsement. The district court concluded, however, that T.H.E. had waived its right to seek reimbursement. It also denied T.H.E.'s claim for defense costs. Because we hold that T.H.E. did not waive its rights to reimbursement of the settlement amounts, we REVERSE and RENDER summary judgment for T.H.E. on that issue. However, we conclude that T.H.E. had a duty to defend Larsen, and we therefore AFFIRM the district court's ruling insofar as it determined that T.H.E. is not entitled to recover its defense costs.

I.

FACTS AND PROCEEDINGS

Larsen is a trucking company which operates on both interstate and intrastate routes. T.H.E. insured Larsen under the Policy for liability up to $1 million. The Policy provides that only the autos specifically described on the declarations page attached to the Policy are "covered autos." A driver is covered under the Policy as an insured while he or she uses, with the named insured's permission, a covered auto that is owned, hired or borrowed by the named insured. The Policy also provides that autos acquired after the Policy begins are covered if, among other things, the named insured requests coverage from T.H.E. within thirty days after

2

acquiring the auto. However, the Policy includes an endorsement that amends this provision to require that the insured must request coverage from T.H.E. within twenty-four hours after acquisition.

In addition, the Policy contained the federally-mandated "Endorsement for Motor Carrier Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1980," which is the subject of this appeal. The endorsement, referred to as Endorsement MCS-90 ("MCS-90"), must be attached to any liability policy issued to a registered motor carrier pursuant to 49 U.S.C. §§ 13906(a)(1), 31139(b)(2) and 49 C.F.R. § 387. The MCS-90 states in pertinent part:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy . . . . It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.

Basically, the MCS-90 makes the insurer liable to third parties for any liability resulting from the negligent use of any motor vehicle by the insured, even if the vehicle is not covered under the insurance policy. The endorsement continues:

3

However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

Thus, the MCS-90 obligates the insured to reimburse the insurer for any payments the insurer would not have been liable to make under the policy but for the terms of the endorsement.

It is undisputed that the tractor involved in the accident underlying this appeal was never listed on the schedule of covered vehicles contained on the declarations page of the Policy. Larsen admits that it has no evidence that it requested coverage for the tractor within twenty-four hours after its acquisition. Rather, it appears that T.H.E. was first informed that Larsen had acquired the vehicle when Larsen submitted a loss notice advising T.H.E. of the accident, twenty-two days after Larsen leased the tractor.

Before any of the plaintiffs injured in the accident filed suit, T.H.E. determined that the tractor was not a covered auto under the terms of the Policy, because Larsen had not requested coverage for the vehicle within twenty-four hours after acquiring it. Accordingly, T.H.E. sent a letter to Larsen advising it that there was no coverage. The letter also advised Larsen that T.H.E. could claim reimbursement for any amounts it paid to settle claims

4

arising from the accident,[1] and invited Larsen to contact T.H.E. with questions.

Thereafter, the injured plaintiffs filed their petitions against Larsen, its driver, and T.H.E. in state court, alleging that the driver's negligent operation of the vehicle caused their injuries, and that "at the time of the accident sued upon herein, [Larsen] was insured by [T.H.E.], in connection with the operation . . . of a 1984 018000 truck at all times pertinent hereto." T.H.E. negotiated settlements with two of the plaintiffs, and informed Larsen of some of the settled amounts in a second letter in which it restated its right to claim reimbursement for the settlement amounts. The letter again invited Larsen to contact T.H.E. with questions. Despite these two letters, no representative of Larsen contacted T.H.E. concerning its denial of coverage, its claim for reimbursement, or the defense of the suits.

Not having received any objections from Larsen, T.H.E. engaged a single attorney to defend the claims of the two remaining plaintiffs. When the plaintiffs demanded amounts in excess of $1 million, T.H.E. sent a third letter to Larsen stating:

> The [Policy] in effect for this loss has a limit of liability of $1,000,000.00 per occurrence for Bodily Injury and Property Damage. There exists the possibility that this loss could exceed your policy limits, therefore, please accept this letter as notice that T.H.E. Insurance Company will not be liable for any award

---

[1] T.H.E. based this advice on the Policy endorsement contained on "Form F," which is the state law counterpart to the MCS-90.

in excess of $1,000,000.00.

Shortly after T.H.E. sent this letter, the remaining plaintiffs agreed to settle their lawsuits for an amount less than $1 million. T.H.E. then filed suit in federal court, seeking a judgment that Larsen is liable under the MCS-90 to T.H.E. for reimbursement of the settlement amounts, as well as the costs T.H.E. incurred in defending the claims. T.H.E. and Larsen filed cross-motions for summary judgment. The district court noted that both parties agreed that T.H.E. had no duty to defend Larsen arising from the terms of the MCS-90. It therefore concluded that principles of Louisiana insurance law should be applied to determine whether T.H.E., by assuming Larsen's defense, had waived its rights to reimbursement under the MCS-90. Because it found that T.H.E. had failed to obtain a nonwaiver agreement to reserve its defense of noncoverage under Louisiana law, the court held that T.H.E. had, in fact, waived its rights. Moreover, the court reasoned that T.H.E. voluntarily defended Larsen, and consequently it was not entitled to recover its defense costs. T.H.E. appealed.

## II.

## ANALYSIS

We review summary judgment rulings de novo, employing the same standards applicable in the district court. Stults v. Conoco, Inc., 76 F.3d 651, 654 (5th Cir. 1996). Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

6

A.    Coverage and Right to Reimbursement

1.    Applicable Law

T.H.E. argues that the district court erred in looking to the Louisiana insurance law on reservation of rights and nonwaiver agreements, because the Policy itself was never implicated.  It argues that since there was never any coverage for the tractor under the Policy, and because the MCS-90 did not create coverage, there was no coverage defense that had to be reserved.  According to T.H.E., the right of reimbursement is a federal right that is specifically reserved in the MCS-90 itself. T.H.E. urges us, therefore, to look only to federal law in evaluating its rights under the MCS-90.

A cogent analysis of these issues requires us to explore the history and public policy underlying the MCS-90.  The MCS-90 was required under the regulations of the now-defunct Interstate Commerce Commission ("ICC").  When the ICC was abolished, its authority to regulate carriers was transferred to the Department of Transportation, but the old regulations remain in effect until new ones are promulgated. John Deere Ins. Co. v. Nueva, 229 F.3d 853, 855 n.3 (9th Cir. 2000).  This Court has stated that ICC endorsements are governed by federal law.  Canal Ins. Co. v. First Gen. Ins. Co., 889 F.2d 604, 610 (5th Cir. 1989), modified on other grounds, 901 F.2d 45 (5th Cir. 1990) (citing Carter v. Vangilder, 803 F.2d 189, 191 (5th Cir. 1986)).

We have also held that the policy embodied in the ICC

regulations "was to assure that injured members of the public would be able to obtain judgments collectible against negligent authorized carriers." Canal v. First Gen., 889 F.2d at 611. Thus, the insurer's obligations under the MCS-90 are triggered when the policy to which it is attached provides no coverage to the insured. The First Circuit has aptly described the obligation placed upon the insurer by the MCS-90 as one of suretyship. "[W]e consider the ICC endorsement to be, in effect, suretyship by the insurance carrier to protect the public-a safety net . . . . [I]t simply covers the public when other coverage is lacking." Canal Ins. Co. v. Carolina Cas. Ins. Co., 59 F.3d 281, 283 (1st Cir. 1995).[2]

Consistent with this line of reasoning, we have held that the endorsement accomplishes its purpose by reading out only those clauses in the policy that would limit the ability of a third party victim to recover for his loss. Carolina Cas. Ins. Co. v. Underwriters Ins. Co., 569 F.2d 304, 312 (5th Cir. 1978). "But there is no need for or purpose to be served by this supposed automatic extinguishment of [a] clause insofar as it affects the insured or other insurers who clamor for part or all of the coverage." Id. Indeed, the MCS-90 states that "all terms, conditions, and limitations in the policy to which the endorsement

---

[2] See also Boston Ins. Co. v. Nogg (In re Yale Express Sys., Inc. ), 362 F.2d 111, 113-14 (2nd Cir. 1966) (interpreting a similar ICC endorsement for loss of cargo, and concluding that the insurer was a surety for the carrier for claims payable solely under the endorsement).

is attached shall remain in full force and effect as binding between the insured and the company." Therefore, in <u>Carolina Casualty v. Underwriters</u>, we held that if an insurer's policy contained the ICC endorsement, it would not render the insurer primary as a matter of law. <u>Id.</u> at 313. We also took this approach in <u>Canal v. First General</u> to hold that the ICC endorsement is not implicated for the purpose of resolving disputes among multiple insurers over which insurer should bear the ultimate financial burden of the loss. <u>Canal Ins. Co. v. First Gen. Ins. Co.</u>, 889 F.2d 604, 611 (5th Cir. 1989), <u>modified on other grounds,</u> 901 F.2d 45 (5th Cir. 1990).[3] From these cases and from the terms of the MCS-90 itself, it follows that when the protection of injured members of the public is not at stake, the MCS-90 and the relevant federal regulations do not address coverage for the purpose of disputes between the insured and the insurer. <u>Cf.</u> <u>Carolina Cas. Ins. Co. v. Underwriters Ins. Co.</u>, 569 F.2d 304, 313 (5th Cir. 1978). As the Eighth Circuit has framed the analysis, "[a]lthough it is true that the endorsement and the pertinent regulations . . . address only public liability and 'do not fix the liability between insured or insurance companies,' we believe the regulations' silence on the issue does not require preemption of

---

[3] <u>See also</u> <u>Carolina Cas. Ins. Co. v. Insurance Co. of N. Am.</u>, 595 F.2d 128, 138 n.32 (3rd Cir. 1979) (recognizing a "general principle" that "a court may give effect to otherwise existing allocations of financial responsibility where the goal of protecting the injured public has already been fulfilled.")

9

state-law doctrines that do not resolve such questions." Redland Ins. Co. v. Shelter Mut. Ins. Co., 193 F.3d 1021, 1022 (8th Cir. 1999) (citations omitted).[4]

We recognize that these cases dealt with the effect of the MCS-90's provision rendering the insurer liable to injured third parties, but we think the principles we have identified are also applicable to the portion of the endorsement giving the insurer a right of reimbursement. Therefore, on the facts of this case, we reject T.H.E.'s argument the we should look only to federal law in evaluating its rights under the MCS-90. The MCS-90 gives T.H.E. the right to seek reimbursement from Larsen for "any payment made by the company on account of any accident, claim or suit involving a breach of the terms of the policy, and for any payment that [T.H.E.] would not have been obligated to make under the provisions of the policy except for the agreement contained in" the MCS-90.

---

[4] See also Carolina Cas. v. Insurance, 595 F.2d at 138 & n.31 (reasoning that "the federal requirements are not so radically intrusive as to absolve lessors or their insurers of otherwise existing obligations under applicable state tort law doctrines or under contracts allocating financial risk among private parties," and declaring that "so massive a disruption of the tissue of state law would be extraordinary in the American legal framework."); Occidental Fire & Cas. Co. of N.C. v. International Ins. Co., 804 F.2d 983, 986 (7th Cir. 1986) (holding that once the injured third party is compensated, state law may be applied to determine which party should bear the ultimate financial burden); Clarendon Nat'l Ins. Co. v. Insurance Co. of the West, No. CV-99-5461, 2000 WL 892864 at *7 (E.D. Cal. June 30, 2000) ("The majority of the federal courts which have considered the issue held that the MCS-90 does not affect the obligations between the insurer and its insured or between joint insurers.")

We think this means that under the circumstances of this case, the right of reimbursement is triggered only if there is no coverage under the Policy. But the construction of insurance policies, and, therefore, the scope of coverage, are matters of state law. See Canal Ins. Co. v. First Gen. Ins. Co., 889 F.2d 604, 608 (5th Cir. 1989), modified on other grounds, 901 F.2d 45 (5th Cir. 1990). Moreover, as we have already indicated, the MCS-90 does not alter the existing policy obligations between the insured and the insurer. We must determine then whether there was coverage for the tractor, either under the terms of the Policy, or because T.H.E. expanded the scope of coverage under the Louisiana law of waiver when it provided a defense to Larsen.

2.   Scope of Coverage and Waiver

Larsen urges us to hold that T.H.E. waived its right to contest coverage for the tractor on several grounds. First, although there is no evidence that it requested coverage for the tractor within twenty-four hours after acquisition, Larsen contends that T.H.E. waived the twenty-four hour notice requirement because it was never explained to Larsen nor strictly enforced by T.H.E.

This contention has no merit. It is true that "[w]aiver occurs when there is an existing right, a knowledge of its existence and an actual intention to relinquish it or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." Steptore v. Masco Constr. Co., 643 So. 2d 1213, 1216 (La. 1994). However, an

11

insured is presumed to know the provisions of his policy.  <u>Stephens v. Audubon Ins. Co.</u>, 665 So. 2d 683, 686 (La. App. 2 Cir. 1995).  The insurance policy constitutes the law between the parties and should be enforced as written if the terms are clear and express the intent of the parties.  <u>Id.</u>  The relevant endorsement makes abundantly clear that a newly acquired auto will be added to the policy only if "[y]ou tell us within twenty-four (24) hours after you acquire it that you want us to cover it . . . ."  Larsen has not cited any authority for its argument that T.H.E. was required to explain such an unambiguous provision.  Moreover, Larsen has not pointed out any evidence that it was T.H.E.'s consistent practice to provide coverage even if the insured had not complied with the twenty-four hour requirement.  This is especially true where, as here, T.H.E. had no knowledge of the vehicle nor opportunity to adjust its premium at any time before the insured submitted a loss notice advising T.H.E. of the accident and making a claim under the Policy.[5]

Second, Larsen contends that T.H.E. waived its rights to contest coverage when it sent Larsen its third letter stating that

---

[5] Larsen bases its argument on the testimony of a T.H.E. representative who stated that if T.H.E. learned by reason of an audit that an insured was using more vehicles than were declared in the policy, T.H.E. might conduct an investigation and potentially add the vehicle to the policy if the omission was just an error.  This is not evidence of a practice by T.H.E. that was "so inconsistent with the intent to enforce" the twenty-four hour requirement "as to induce a reasonable belief" that it had been waived.

12

"[t]he above policy in effect for this loss has a limit of liability of $1,000,000.00 per occurrence . . . ." It is Larsen's argument that T.H.E.'s statement that the Policy "was in effect for this loss" would have induced a reasonable person to believe that T.H.E. was providing coverage for the accident. Again, this argument lacks merit. The Policy was in effect to the extent that the MCS-90 endorsement that was attached to it required T.H.E. to pay the claims of the injured plaintiffs up to the Policy's limit of $1 million. Thus, the letter was not inconsistent with T.H.E.'s intent to enforce its right to deny coverage.

Larsen also argues, and the district court held, that T.H.E. failed to reserve its rights to reimbursement under the MCS-90 by coming forward with a defense for Larsen without obtaining a nonwaiver agreement. In <u>Tate v. Charles Aquillard Ins. & Real Estate, Inc.</u>, 508 So. 2d 1371, 1375 (La. 1987), the Louisiana Supreme Court held that "waiver may apply to any provision of an insurance contract under which the insurer knowingly and voluntarily elects to relinquish his right, power or privilege to avoid liability, even though the effect may bring within coverage risks originally excluded or not covered." The burden of proving waiver is on the party asserting it. <u>Id.</u> Louisiana courts apply waiver principles stringently to "uphold the prohibition against conflicts of interest between the insurer and the insured . . . ." <u>Steptore</u>, 643 So. 2d at 1216. Accordingly, the Louisiana supreme court held in <u>Steptore</u> that the scope of coverage under an

13

insurance policy could be expanded by waiver "when an insurer, with knowledge of facts indicating noncoverage under the insurance policy, assumes or continues the insured's defense without obtaining a nonwaiver agreement to reserve its coverage defense . . . ." Id.

Larsen has cited no authority explaining what constitutes a nonwaiver agreement under Louisiana law, and we have found none. Although one Louisiana court found no waiver when the insurer obtained a written instrument executed by the insured, see Cassey v. Stewart, 727 So. 2d 655, 658 (La. App. 2 Cir. 1999), writ denied, 743 So. 2d 209 (La. 1999), the court did not hold that such a document was required. Therefore, we hold that T.H.E. adequately reserved its rights to deny coverage when it put Larsen on notice of its position that there was no coverage for the tractor under the Policy and that T.H.E. had a right to seek reimbursement of any amounts paid after settling the plaintiffs' claims. Because Larsen received this notice yet made no effort to contact T.H.E. to express any concerns or objections, it implicitly agreed that T.H.E. had reserved its rights to deny coverage under the Policy and consequently to seek reimbursement under the MCS-90.[6]

---

[6] See also William S. McKenzie & H. Alston Johnson, Insurance Law and Practice, 15 Louisiana Civil Law Treatise § 216 (1996) in which the authors discuss the Louisiana Supreme Court's decision in Steptore, and note:

The court did not discuss what constitutes a "nonwaiver agreement." Presumably, the court is not

14

Larsen also argues that T.H.E. waived its rights by failing to obtain separate counsel for Larsen when T.H.E. knew it would deny coverage for the tractor. Larsen relies on <u>Dugas Pest Control of Baton Rouge, Inc. v. Mutual Fire, Marine and Inland Ins. Co.</u>, 504 So. 2d 1051, 1054 (La. App. 1 Cir. 1987), which held that "if the insurer chooses to represent the insured but deny coverage it must employ separate counsel." While we acknowledge this rule, we note that the court in <u>Dugas</u> held that if the insurer fails to obtain separate counsel in these circumstances, then due to the ethical considerations involved, the insurer becomes liable for the attorney fees and costs of the insured's defense. <u>Id.</u> The court did <u>not</u> hold that failure to obtain separate counsel vitiates an insurer's reservation of rights. We recognize that the insurer in

requiring a written instrument executed by both parties. A written communication from the insurer to the insured should be sufficient when it gives notice that the insurer, while willing to undertake the defense of the insured, reserves it right to assert coverage defenses. If the insured then accepts defense by the insurer, the insured does so with knowledge of the potential conflict of interest and with the implicit agreement that the insurer has reserved its coverage defenses.

See also <u>Scottsdale Ins. Co. v. Gulf Sea Temporaries, Inc.</u>, 1999 WL 130633 at *4 (E.D. La. Mar. 10, 1999) (citing 7C Appleman, <u>Insurance Law and Practice</u> § 4686 (1979) ("[W]here the insured made no offer to take over the defense of the action, he would be deemed to have impliedly assented to the conduct of the defense by the insurer under a reservation of rights.")); <u>Dennis Sheen Transfer v. Georgia Cas. Co.</u>, 113 So. 165 (La. 1927) (court found no waiver when insurer assumed insured's defense despite the latter's failure to give timely notice of the accident, when insured refused to sign a nonwaiver agreement but had received a letter from insurer reserving its defense of lack of timely notice).

Steptore engaged a single attorney to defend both itself and the insured when it had knowledge of facts that might have indicated noncoverage. However, that case is distinguishable. There, the insurer failed to reserve its rights because it also did not obtain a nonwaiver agreement. Steptore, 643 So. 2d at 1217.[7] We think it important to note that in this case, Larsen took no action on the case nor made any objection whatsoever to T.H.E.'s settlement with the plaintiffs, even after receiving T.H.E.'s reservation of rights letters and two invitations from T.H.E. to participate in the matter.

Moreover, it is undisputed that the attorney engaged by T.H.E. did not know that T.H.E. had denied coverage for Larsen's claims. The question of coverage was never an issue in the state court action underlying this case. Therefore, T.H.E. did not retain the same counsel to defend both Larsen against the injured plaintiffs' claims and T.H.E. on the issue of coverage and the right to reimbursement. In this situation, it is reasonable to expect that counsel would have sought to minimize liability to the injured plaintiffs as much as possible. In addition, Larsen was not precluded from litigating the issue of coverage in the current action. Consequently, we see no reason why Larsen was prejudiced by T.H.E.'s retention of a single attorney in the state court

---

[7] This distinction was also noted in Scottsdale, 1999 WL 130633 at *4.

16

proceeding.

Larsen makes two final arguments that T.H.E. should not be reimbursed for the amounts it paid to settle the injured plaintiffs' claims, but both arguments are unavailing. First, Larsen asserts that the MCS-90 only requires an insurer to pay a final judgment in favor of an injured plaintiff, not settlement amounts. Because T.H.E. settled the claims in this case, it contends T.H.E. is not entitled to reimbursement. In support of its position, Larsen points to the language of the MCS-90 which states, "the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured." We reject Larsen's argument. If the insurer must pay a final judgment under the MCS-90, there is no reason why it could not seek a favorable settlement rather than risk litigating to a final judgment that could be more onerous. In <u>Canal v. First General</u>, we held that an insurer who paid a settlement because of the requirements of the MCS-90 was entitled to reimbursement from the insurer who wrongfully denied coverage to the insured. <u>Canal Ins. Co. v. First Gen. Ins. Co.</u>, 889 F.2d 604, 612 (5th Cir. 1989), <u>modified on other grounds,</u> 901 F.2d 45 (5th Cir. 1990).[8] Moreover, we note that the reimbursement provision of the MCS-90 permits the

_____

[8] <u>See also</u> <u>Harco Nat'l Ins. Co. v. Bobac Trucking Inc.</u>, 107 F.3d 733 (9th Cir. 1997), where the Court required the insured to reimburse an insurer who paid a portion of a settlement on the insured's behalf pursuant to its duties under the MCS-90.

17

insurer to recover "any payment," not just final judgments, that the insurer would not have been obligated to pay except for the agreement contained in the MCS-90.

Finally, Larsen argues that T.H.E. should be barred from recovering the settlement amounts because it did not seek Larsen's consent prior to agreeing to the settlements. However, we note that Section II A of the Policy states that T.H.E. may investigate and settle any claim as it considers appropriate.

B.   Duty to Defend and Responsibility for Defense Costs

T.H.E. also argues that we should not apply the state law of waiver because the duty to reserve rights is part of the duty to defend. It contends that where the insurer has no duty to defend, there can be no waiver of a coverage defense even if the insurer did not reserve its rights or deny coverage.[9] It is T.H.E.'s position that it never had a duty to defend Larsen either under the terms of the Policy or the MCS-90. It defended Larsen, rather, in order to mitigate damages and protect itself from having to pay a default judgment in the state court proceedings. Furthermore, because it had no duty to defend Larsen, T.H.E. argues that we should award it defense costs under the MCS-90's reimbursement provision.

We express no opinion as to whether, under Louisiana law, the

---

[9] In support of its position, T.H.E. cites only 46 C.J.S. Insurance § 824 (1993). It has identified no Louisiana authority on this point.

18

presence or absence of a duty to defend generally has any impact on whether the insurer must reserve its right to deny coverage when it provides a defense. We do hold, however, that T.H.E. did have a duty to defend Larsen, and that on the facts of this case, the state law of waiver is applicable. Furthermore, because T.H.E. had a duty to defend, it is not entitled to be reimbursed for defense costs.

We agree with T.H.E. that the MCS-90 does not impose a duty to defend on the insurer where such a duty would not have otherwise existed. In <u>Canal v. First General</u>, we held that the MCS-90 does not in itself require the insurer to defend an insured. 889 F.2d at 612. And as we have already stated in this opinion, the MCS-90 leaves unaffected any provisions of the Policy that do not impact the insurer's duty to compensate injured members of the public. Therefore, although the MCS-90 itself does not impose a duty to defend upon the insurer, neither does it negate such a duty that might fall upon the insurer under the Policy as interpreted according to state law. <u>Cf.</u> <u>id.</u> at 611; <u>Carolina Cas. Ins. Co. v. Underwriters Ins. Co.</u>, 569 F.2d 304, 312 (5th Cir. 1978).[10]

_____

[10] <u>See also</u> <u>Carolina Cas. Ins. Co. v. Insurance Co. of N. Am.</u>, 595 F.2d 128, 139, 144 (3rd Cir. 1979) (holding that the ICC endorsement does not impose a duty to defend nor does it alter otherwise existing duties, and concluding that the question of the duty to defend was a matter of state law); <u>Harco Nat'l Ins. Co. v. Bobac Trucking Inc.</u>, 107 F.3d 733, 736 (9th Cir. 1997) ("[T]he reimbursement provision of the MCS-90 is inconsistent with implying a duty to defend."); and <u>Clarendon Nat'l Ins. Co. v. Insurance Co. of the West</u>, No. CV-99-5461, 2000 WL 892864 at *7 (E.D. Cal. June

Under Louisiana law, the insurer's duty to defend is generally broader than its liability for damage claims. American Home Assurance Co. v. Czarniecki, 230 So. 2d 253, 259 (La. 1969).

> [T]he insurer's duty to defend . . . is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage.
>
> Thus, if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Additionally, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit brought against the insured.

Id. (citations omitted).

It is also the rule in Louisiana that "where the petition alleges facts which would place the claim within the coverage of the policy, the insurer cannot avoid the duty to defend upon its own determination that there is no coverage under its policy provisions." Smith v. Insurance Co. of the State of Pa., 161 So.2d 903, 918 (La. App. 1 Cir. 1964). However, an allegation of coverage by the injured plaintiff cannot create a duty to defend when the facts of the petition clearly place the claim outside the policy's coverage. For example, in Michel v. Ryan, 373 So. 2d 985, 988 (La. App. 3 Cir. 1979), although the plaintiff alleged the policy "was in full force and effect," he also alleged that the

---

30, 2000) (observing that federal courts have generally held that the MCS-90 does not affect the obligations between the insurer and its insured).

20

accident occurred on a date that was more than three years beyond the policy period. Consequently, the court held that the petition unambiguously excluded coverage.

In the case underlying this appeal, the plaintiffs alleged that "at the time of the accident sued upon herein, [Larsen] was insured by [T.H.E.], in connection with the operation . . . of a 1984 018000 truck at all times pertinent hereto." Unlike in Michel, however, whether there is coverage in this case depends on facts and circumstances not apparent from the face of the Policy. Though the tractor involved in the accident was not listed in the schedule of covered autos, it nevertheless could have been covered had Larsen requested coverage within twenty-four hours after acquiring it. T.H.E. admits in its brief that once coverage is timely requested, coverage attaches immediately, but an invoice reflecting the new premium is issued some time within the following thirty days. The record also indicates that a final endorsement showing coverage for the new vehicle could be issued by T.H.E. four to five months after coverage was requested. Therefore, the allegations of the petitions did not "unambiguously exclude coverage," because it was entirely possible that at the time of the accident, the tractor could have been covered. "An insured's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy."

21

<u>Steptore v. Masco Constr. Co.</u>, 643 So. 2d 1213, 1218 (La. 1994).[11]

T.H.E. had a duty to defend Larsen under Louisiana law. Because the MCS-90 does not alter existing duties between the insured and the insurer, T.H.E. is not entitled to be reimbursed for defense costs.[12]

---

[11] This case is also different from <u>Richards v. Farmers Export Co.</u>, 377 So. 2d 859 (La. App. 4 Cir. 1979) (on rehearing), wherein individual employees were alleged to be insured as "executive officers" under their company's general liability policy. The employees, however, were not "executive officers" as defined in the policy. The court held the company's insurer had no duty to provide a defense, because the policy was issued to the company, not to the individual employees, who were strangers to the policy. The court stated:

> Surely the <u>Czarniecki</u> doctrine cannot be extended to any case where an insurance company, which is a total stranger to the defendant, is simply alleged to provide coverage. Carried to its logical conclusion, this argument would enable a plaintiff to pick out of the air any insurance company, allege coverage and require the company to defend.

<u>Id.</u> at 863. Those concerns are not present in the instant case, because Larsen as the named insured is not a stranger to the Policy.

[12] T.H.E. relies on our decision in <u>Canal v. First General</u> as support for its claim for defense costs. There, Canal Insurance Company defended the insured and paid the claims only because of the requirements of the MCS-90, after First General Insurance Company wrongfully denied coverage. We held that Canal provided a defense not because it had a duty to defend under the MCS-90, but because it had a "manifest interest in controlling the litigation to minimize the size of any judgments once First General denied coverage and refused to defend." <u>Canal Ins. Co. v. First Gen. Ins. Co.</u>, 889 F.2d 604, 612 (5th Cir. 1989), <u>modified on other grounds</u>, 901 F.2d 45 (5th Cir. 1990). We determined, however, that Canal was not acting as a "volunteer" under Mississippi insurance law, and held that First General had to reimburse Canal for the costs of defense. <u>Id.</u> However, our holding was based on our determination that First General had a duty to defend the insured and Canal did

22

CONCLUSION

Because T.H.E. adequately reserved its rights to deny coverage and seek reimbursement from Larsen for the settlement amounts, there is no genuine issue of material fact and T.H.E. is entitled to judgment as a matter of law on that issue. However, T.H.E. had a duty to defend Larsen, and it is therefore not entitled to recover defense costs.

REVERSED and RENDERED in part, and AFFIRMED in part.

---

not. This holding is consistent with our decision today that T.H.E. is not entitled to defense costs because it had a duty to defend Larsen.