**THE TRAVELERS INDEMNITY CO. of IL.**

v.

**WESTERN AMER. SPEC. TRANSPORTATION SERV., INC., et al**

**No. CIV.A.6:01–637.**

United States District Court, W.D. Louisiana, Lafayette–Opelousas Division.

Nov. 27, 2002.

William Shelby McKenzie, Austen M. Adams, Taylor Porter, Baton Rouge, LA, Thomas M. Crawford, Litchfield Cavo, Chicago, IL, for Travelers Indemnity Co. of Ill.

James M. Dill, Dill Law Firm, Lafayette, LA, for Western Amer. Specialized Transp. Services, Inc., Nobel Ins. Co., Richard Wade Barnett.

Andre F. Toce, Michael G. Daiy, Adras P.L. Endom, Andre F. Toce & Assoc., Lafayette, LA, for Dixie Carter, Chris Carrier.

## MEMORANDUM RULING

MELANCON, District Judge.

Before the Court are motions for summary judgment filed by Dixie Carriere and Chris Carriere, individually and on behalf of their minor children, Kelly Carriere and Casey Carriere, ("the Carrieres") and by Richard Wade Barnett, Nobel Insurance

and Western American Specialized Transportation Services, Inc., ("Western") and cross motions for summary judgment filed by Travelers Indemnity Company of Illinois ("Travelers"). For the reasons that follow, the motions filed by the Carrieres and Western are granted, and the motions filed by Travelers are denied.

### Background

This action for declaratory judgment has its genesis in an automobile accident which occurred on March 12, 1997 when a truck owned and operated by Richard Wade Barnett collided with an automobile driven by Dixie Carriere. Dixie Carriere was severely injured in the accident. At the time of the accident, Barnett was in the course and scope of his employment with Western American Specialized Transportation Services, Inc. Barnett's truck was leased by Western. Western and Barnett were covered by a primary insurance policy issued by Nobel Insurance Company ("Nobel") in the amount of $1,000,000.00. As a licensed interstate carrier of certain materials, however, Western was obligated to carry a minimum of $5,000,000.00 in insurance coverage to comply with the financial responsibility requirements of the Federal Motor Carrier Safety Regulations. To that end, Western procured a policy of insurance from Travelers Indemnity Company of Illinois for an additional $4,000,000.00 in excess coverage. Travelers' Policy # 7FSJEX–264T6575–96. The Travelers policy included an endorsement known in the trucking and insurance industries as an MCS–90 Endorsement, which provides coverage to third-party members of the public for personal injuries and damages caused by certified interstate carriers. *Id.*

The Carrieres filed a state court action in the 15th Judicial District Court, Parish of Lafayette, Louisiana against Barnett and Western. The case proceeded to trial and the jury rendered a verdict in favor of the Carrieres and against Barnett and Western in the amount of $2,674,540.00. Following the trial, Nobel deposited for immediate withdrawal its policy limits of $1,000,000.00, plus interest that Nobel determined to be due, into the registry of the Court. When the Carrieres attempted to collect the remainder of the judgment from Travelers, Travelers denied coverage and filed the instant declaratory judgment action. The Carrieres subsequently filed a counter claim, asserting Travelers' obligation to pay the remainder of the judgment. The Carrieres contend that under the MCS–90 Endorsement in Travelers' policy, Travelers is obligated to pay the Carrieres that part of the judgment excess to the Nobel policy limits. Travelers disputes the applicability of the MCS–90 Endorsement to the judgment in the Carrieres' case.

### Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. PROC. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As to issues which the nonmoving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the nonmoving party's claim. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

Once the movant produces such evidence, the burden shifts to the respondent

to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Id.* The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Little,* 37 F.3d at 1075. If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. FED. R. CIV. PROC. 56(c); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the nonmoving party. *Id.*

### Analysis

This action arises from a complaint for declaratory judgment filed by Travelers against the Carrieres, Barnett, Western and Nobel. After Travelers filed its complaint, the Carrieres filed a counter claim for declaratory judgment against Travelers, Barnett, Western and Nobel, and Travelers filed a cross claim against Nobel. On November 15, 2001, the Carrieres filed a motion for summary judgment moving the Court for a judgment ruling that Western and Barnett are covered by the provisions of the MCS–90 Endorsement under the Travelers' Commercial General Liability Policy issued to Western, and therefore, Travelers has a financial responsibility under the MCS–90 Endorsement to satisfy a portion of the judgment that the Carrieres obtained against Western for the accident in question. *R. 16.* On December 3, 2001, Western, Barnett and Nobel also filed a motion for summary judgment against Travelers adopting the Carrieres' motion

and memorandum. *R. 19.* Thereafter, on December 28, 2001, Travelers filed a cross motion for summary judgment contending that the MCS–90 Endorsement in its policy does not apply to the facts of this case. *R. 24.* The Court held a conference with the parties on April 8, 2002 and granted a motion extending the Carrieres' deadline to file an opposition to Travelers' motion to June 14, 2002 and allowing additional time for discovery. *(R. 35, 38).* On June 14, 2002, the Carrieres filed a memorandum in opposition to Travelers' motion for summary judgment as well as a supplemental memorandum to their own motion for summary judgment. *(R. 43).* Also, on that date, Western, Barnett and Nobel filed an opposition to Travelers' motion *(R. 45)* and Travelers filed a second motion for summary judgment. *(R. 39).* The Carrieres filed an opposition to Travelers' second motion for summary judgment on July 1, 2002. Because the parties agree that the issue before the Court is whether the MCS–90 Endorsement in the Travelers' policy applies in this case, the Court will consider all of the motions together as follows.[1]

### A. The MCS–90

"Congress has mandated that the ICC [Interstate Commerce Commission] issue operating permits to motor carriers only if the motor carrier has filed with the ICC an adequate 'bond, insurance policy, or other type of security ... in an amount not less than ... the Secretary of Transportation prescribes....' In addition, the ICC is empowered to promulgate regulations to insure that motor carriers operating tractors or trailers as lessees under leasing arrangements assume total responsibility for the operation of their rented vehicles, including obtaining adequate in-

---

1. While Travelers asserts that its underlying Commercial General Liability policy does not cover the accident in question, plaintiffs contend only that the MCS–90 Endorsement under the Travelers policy is applicable.

surance. The ICC requires that all equipment leases entered into by 'authorized carrier lessees' " contain provisions stating that the lessee " 'shall have exclusive possession, control, and use of the equipment for the duration of the lease,' and that the lessee 'assume complete responsibility for the operation of the equipment for the duration of the lease.' Further, a motor carrier may not engage in interstate commerce unless it has filed with the ICC a surety bond or certificate of sufficient insurance 'conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of motor vehicles subject' to ICC regulation. To assure compliance with the latter regulation and the underlying congressional mandate [ ] the ICC has prescribed a form endorsement, [the MCS–90]. . . ." *Canal Ins. Co. v. First Gen. Ins. Co.*, 889 F.2d 604, 610–611 (5th Cir.1989) (internal citations omitted). "The MCS–90 was required under the regulations of the now-defunct Interstate Commerce Commission ('ICC'). When the ICC was abolished, its authority to regulate carriers was transferred to the Department of Transportation, but the old regulations remain in effect until new ones are promulgated. . . the policy embodied in the ICC regulations 'was to assure that injured members of the public would be able to obtain judgments collectible against negligent authorized carriers'. . . 'Wje consider the ICC endorsement to be, in effect, suretyship by the insurance carrier to protect the public-a safety net . . . . [I]t simply covers the public when other coverage is lacking.' " *T.H.E. Ins. Co. v. Larsen Intermodal Services, Inc.*, 242 F.3d

667, 672 (5th Cir.2001)(internal quotations omitted).

The financial responsibility requirements that led to the adoption of the MCS–90 were originally promulgated in the Motor Carrier Act of 1980. Section 30 of the Act mandated that motor carriers transporting persons or property in interstate commerce with a gross weight rating of 10,000 pounds or more were required to obtain minimum levels of financial responsibility to cover public liability or property damage. *See* 49 U.S.C. §§ 31139. Motor carriers are defined by the Motor Carriers Act as "for-hire motor carrier or a private motor carrier. The term includes, but is not limited to, a motor carrier's agent, officer, or representative; an employee responsible for hiring, supervising, training, assigning, or dispatching a driver; or an employee concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories." It is undisputed that Western is registered by the Department of Transportation under ICC # 171961 as a motor carrier engaged in interstate commerce [2] and is required to include the federally-mandated "Endorsement for Motor Carrier Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1980," also know as the "Form MCS–90," which must be attached to any liability policy issued to a registered motor carrier pursuant to 49 U.S.C. §§ 13906(a)(1), 31139(b)(2) and 49 C.F.R. § 387.7. *Larsen,* 242 F.3d at 670. It is also undisputed that the Travelers' policy issued to Western contains an MCS–90 Endorsement which provides in part:

---

**2.** Defendants represent that the motor carriers subject to regulation under the Motor Carriers Act and required to include the MCS–90 Endorsement in their liability policies are: (1) Motor common carriers—those that hold themselves out to provide transportation of persons or property for the general public; and (2) Motor contract carriers— those that provide transportation for persons or property in accord with continuing agreements, and that Western is both a motor common carrier and a motor contract carrier.

"In consideration of the premium stated in the policy to which this endorsement is attached, the insurer agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement."

Travelers' Policy # 7FSJEX–264T6575–96 MCS–90 Endorsement.

### 1. *Interstate transportation*

In its first cross motion for summary judgment, Travelers submits that because the financial requirements of the Motor Carrier Act, 49 U.S.C. 31139(b), do not include transportation of property for compensation by a motor vehicle "between a place in a state and another place in the very same state," they do not apply to the situation at bar where "[t]he truck never went outside of the State of Louisiana." Travelers contends that the MCS–90 only applies to "interstate" transportation and because the shipment involved in the accident in question was wholly intrastate the ICC has no jurisdiction in this case, and the financial requirements of the Motor Carrier Act, hence the MCS–90 Endorsement, do not apply.

Defendants assert that discovery conducted following the Court's April 4, 2002 conference with the parties revealed that Western was engaged in interstate transportation at the time of the accident. The May 20, 2002 affidavit of Timothy J. Domingue, Materials Analyst for Newfield Exploration Company, Inc. ("Newfield"), establishes that the shipment in question originated from Newfield's Dock Facility at Intracoastal City, Louisiana and the final destination was "a Newfield offshore construction site at Vermillion (Block 398) located over 50 miles beyond the territorial boundaries of Louisiana, located in federal waters." Affidavit of Domingue. Domingue's affidavit further states that the shipment contents "were placed on a helicopter or a vessel on March 12, 1997 at 1900 hrs for transfer to Vermillion (Block 398)." *Id.* Travelers argues that pursuant to 49 U.S.C. § 13506(a)(8)(B), the U.S. Department of Transportation has no jurisdiction where a shipment in continuous movement is transported by an air carrier subsequent to ground transportation. Travelers does not address that Do-

mingue's affidavit also indicates the shipment may have been transferred offshore by vessel. The parties have cited no case law for their positions and the Court is unaware of any Fifth Circuit jurisprudence related to the issue of whether transportation from land within a state to a site in federal waters is considered "interstate" transportation.

In addition to the aforesaid discovery, the Carrieres direct the Court to the case of *Reliance National Insurance Co. v. Royal Indemnity Co.*, 2001 WL 984737 (S.D.N.Y. Aug.24, 2001), in which the New York district court held that the ICC regulations applied to an accident which occurred during a wholly intrastate trip. In *Reliance*, an independent owner-operator leased his truck to an ICC licensed motor carrier engaged in interstate trucking. During the lease's duration, the owner-operator also leased his truck to another company for use as a float in a parade. The truck's parade trip was wholly intrastate. During the parade, an accident occurred in which an individual was struck and killed by the truck. Following the accident, the insurance company for the ICC licensed motor carrier sought a declaratory judgment as to its obligation to cover the truck owner. In making its determination as to coverage, the New York district court considered whether or not the ICC had jurisdiction over the wholly intrastate trip. The court initially noted that " '[the ICC], as a creation of Congress, has only the power bestowed upon it by its constituent legislation,' and this authority 'is not coextensive with the plenary authority of Congress under the Commerce Clause.' " *Id.* at *3 (internal citations omitted). While the court acknowledged that "the ICC's jurisdiction over transport is not unlimited", it noted that " 'the Interstate Commerce Act is a highly remedial statute and its terms are broadly comprehensive enough to bring within them all of those who, no matter what

form they use, are in substance engaged in the business of transportation of property on the public highways for hire.' " *Id. citing Georgia Truck System v. ICC*, 123 F.2d 210, 211 (5th Cir.1941). The court also noted "[t]he Act being a remedial statute, it should be liberally interpreted to effect its evident purpose.' " *Id. citing McDonald v. Thompson*, 305 U.S. 263, 265, 59 S.Ct. 176, 83 L.Ed. 164 (1938) and *Piedmont and N. Ry. Co. v. I.C.C.*, 286 U.S. 299, 311, 52 S.Ct. 541, 76 L.Ed. 1115 (1932) ("The Transportation Act was remedial legislation, and should therefore be given a liberal interpretation...."). *Id.* Relying on established Fifth Circuit and Supreme Court jurisprudence, the court held that the insurance company's reading of the ICC's jurisdiction was "overly narrow and ignores both the statute's plain language and Congress' evident intent." *Id.* The court explained its reasoning as follows:

"Reliance's argument rests on the theory that the ICC's jurisdiction is based solely upon the geography traversed by any given shipment—i.e., if it does not cross state, territorial, or international lines, the ICC has no jurisdiction. Had Congress only written 49 U.S.C. § 13501 to say 'The Secretary and the Board have jurisdiction ... over transportation by motor carrier ... to the extent that passengers, property or both are transported by the motor carrier—(1) between a place in—(A) a State and a place in another State,' Reliance might have an argument. However, Congress chose to give the ICC jurisdiction over not only 'transportation by motor carrier,' but also 'the procurement of that transport.' Whereas 'transportation by motor carrier' focuses on the transport itself, 'the procurement of transport' focuses on the business arrangements through which the interstate transport was procured. The statute's plain lan-

guage gives the ICC jurisdiction over both."
*Id.* at *4–5.

Recognizing that the focus should be on whether or not the "procurement", or lease agreement, for the transport was interstate in nature, the court relied on the clearly established standards governing the nature of interstate transportation, the "essential character" of the shipment.[3] The court stated that the "proper question is whether the procurement's 'essential character [as]... manifested by the shipper's fixed and persisting transportation intent at the time of [the lease]' was for interstate or intrastate transport." *Id.* at *5. The court found that where "an (1) interstate carrier, (2) signs an exclusive lease with a trucker to perform interstate transport, (3) which references the application of ICC regulations in the lease, and (4) thereafter provides the trucker with the carrier's ICC logo, it would be illogical to hold that the ICC is suddenly divested of jurisdiction while the trucker performs a single intrastate transport." *Id.* at *6. Thus, the court held that the ICC regulations applied to the lease agreement before it because it was the trucking company's intention at the time it procured the truck and services that the lease be for interstate transport. *Id.*

■ Travelers urges the Court to adopt the reasoning of the Florida Court of Appeals in *Branson v. MGA Insurance Company, Inc.,* 673 So.2d 89 (Fla.App.1996) and *General Security Insurance Co. v.*

*Barrentine,* 829 So.2d 980, 2002 WL 31477118 (Fla.App. 1 Dist. Nov.7, 2002).[4] It is axiomatic that this Court is not bound by decisions rendered by another state's appellate courts' decisions for guidance in a matter such as the instant issue. Rather, the Court agrees with the sound reasoning of the New York district court and finds that its holding in *Reliance* is consistent with the Fifth Circuit's jurisprudence defining the authority of the ICC and the purposes underlying the financial requirements of the MCS–90 Endorsement.

■ It is undisputed that in the instant case Barnett made interstate hauls exclusively for Western, under Western's ICC authority, in the months preceding the accident with the Carrieres. Depo. of David M. Neher 78–80. The lease between Western and Barnett clearly states that "[Barnett] is operating exclusively for [Western]." Further, the lease states that "[Western], as both an interstate common and a contract carrier by motor vehicle, is subject to the regulations enacted by the ICC, State regulation, and any municipal regulations, and under the provisions of the Interstate Commerce Act, and that the ICC has enacted certain rules and regulations relating to the leasing of equipment by contract carriers by motor vehicle ... the parties hereto agree that it is their intent that [Western] shall comply fully with said rules and regulations." Lease Agreement between Richard W. Barnett and Western American Specialized Transportation Services, Inc. The relevant facts

---

**3.** One of the cases cited by the *Reliance* court for the "essential character" standard was *Merchants Fast Motor Lines, Inc. v. ICC,* 5 F.3d 911 (5th Cir.1993). In *Merchants,* the Fifth Circuit stated that "[w]hether transportation between two points within a single state is interstate or intrastate depends on the 'essential character' of the shipment. The critical factor in determining the shipment's essential character is the fixed and persisting intent of the shipper at the time of the ship-

ment. The totality of the facts and circumstances will determine whether a shipper has the requisite intent to move goods continuously in interstate commerce."

**4.** While the *Branson* and *Barrentine* courts did not apply the "essential character" standard governing the nature of interstate transportation, they found that the transportation was "purely intrastate."

of this case, as provided in the foregoing, are virtually identical to those in *Reliance*, in which the court ultimately held, "where, as here, an (1) interstate carrier, (2) signs an exclusive lease with a trucker to perform interstate transport, (3) which references the application of ICC regulations in the lease, and (4) thereafter provides the trucker with the carrier's ICC logo, it would be illogical to hold that the ICC is suddenly divested of jurisdiction while the trucker performs a single intrastate transport. This would be especially incongruous in light of the fact that the regulation at issue were promulgated by the ICC at Congress' specific direction." *Reliance*, 2001 WL 984737 at *6 (citing *Simmons v. King*, 478 F.2d 857, 866 (5th Cir.1973)) ("The legislative-administrative travail behind the ICC regulations on trip leases reflects the importance attached by the Congress and ICC to the economic necessity for such short term leases and why it is critical that ICC regulations and the leases mandated by them have supreme, controlling significance."). Applying the reasoning of *Reliance* to the case at bar, including the jurisprudence of the Fifth Circuit cited therein, it is clear that Western explicitly intended to procure Barnett's services for interstate transport, and therefore, the ICC regulations, in particular the MCS–90 Endorsement, apply to the trip in question.

Based on the Court's ruling, is not necessary to address Traveler's argument that the ICC does not have jurisdiction over the transportation of the shipment in question because the shipment was not between Louisiana and another state. The Court notes with interest, however, that section 31139(b) of the Motor Carrier Act provides that the minimum levels of financial responsibility apply to the "transportation of property for compensation by motor vehicle in the United States between a place in a State and . . . (C) a place outside the United States." 49 U.S.C. 31139(b)(1)(C).

### 2. *Gross Vehicular Weight Rating*

In its second motion for summary judgment, Travelers further contends that the truck Barnett was driving at the time of the accident, a 1987 Ford F.250, is exempt from the DOT regulations and the parameters of the MCS–90 Endorsement because it has a gross vehicular weight rating of 9,500 pounds. Travelers asserts that 49 U.S.C. § 31139 and C.F.R. § 387.3, federal regulations mandating minimum levels of financial responsibility, exclude motor vehicles with a gross vehicular weight rating of less than 10,000 pounds. *(R. 39)*. Title 49 of the United States Code, section 31139 provides in part:

> (g) Nonapplication.—This section does not apply to a motor vehicle having a gross vehicle weight rating of less than 10,000 pounds if the vehicle is not used to transport in interstate or foreign commerce—
>
> (1) class A or B explosives;
>
> (2) poison gas; or
>
> (3) a large quantity of radioactive material.

49 USC § 31139(g).

Title 49 of the Code of Federal Regulations, section 387.3 states in part:

> The rules in this part do not apply to a motor vehicle that has a gross vehicle weight rating (GVWR) of less than 10,-000 pounds. This exception does not apply if the vehicle is used to transport any quantity of a Division 1.1, 1.2, or 1.3 material, any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group 1, Hazard Zone A, or to a highway route controlled quantity of a Class 7 material as it is defined in 49 CFR

173.403, in interstate or foreign commerce.

49 C.F.R. § 387.3.

 Defendants argue, and Travelers does not dispute, that during the policy period covering the accident at issue, Western was a certified ICC motor carrier engaged in both interstate transportation of cargo for hire and transportation of paints and solvents, which are classified as hazardous materials under the Motor Carrier Act. Depo. of Golder, p. 96. Nor does Travelers dispute that at times prior to the accident at issue Barnett hauled hazardous cargo for Western in the truck in question. Carrieres' Memorandum referencing the Depo. of Barnett. The record indicates that Travelers issued policy number 7FSJ–EX–264T657–5–96 to Western on September 4, 1995. Commercial General Liability Following Form Excess Liability Policy. Travelers then filed a Liability Certificate of Insurance with the Interstate Commerce Commission certifying that the policy it had issued to Western was a following form excess policy that provided coverage in the amount of $4,000,000.00 in excess of Western's primary policy issued by Nobel. Motor Carrier Automobile Injury Liability And Property Damage Liability Certificate of Insurance. The record also reflects that the primary policy covered "any autos" that Western employed. "Schedule of Coverages and Covered Autos"; "Trucker's Coverage Form." The deposition of Scott Golder, Travelers' Umbrella and Excess Manager /Underwriter, confirms that Travelers insured the excess policy to Western as a transportation company, covering all of Western's vehicles. Depo. of Golder, pp. 48–49; 96. Thus, the Travelers' following form policy covering Western's financial responsibility requirements under the Motor Carrier Act extended coverage to "any autos" that Western employed. *Home Ins. Co. v. American Home Products Corp.*, 902 F.2d 1111, 1113 (2nd Cir.1990) ("the policy is a 'following form' agreement, subjecting [the insurer] to the 'terms, conditions and exclusions' of the [ ] excess policy"). As there is no dispute that the Barnett truck was used in transportation by Western as a licensed ICC motor carrier, was used in transporting hazardous materials for Western and was included as a covered vehicle under Western's insurance policies, the MCS–90 Endorsement, and the public policy upon which it was based, provided coverage in this case. *See Transport Indem. Co. v. Paxton Nat'l Ins. Co.*, 657 F.2d 657, 659 (5th Cir.1981) ("ICC policy factors are frequently determinative where protection of the public or a shipper is at issue.").

### Conclusion

Based on the policy underlying the MCS–90 as well as the specific facts of this case, the Court finds that (1) the lease agreement between Western and Barnett was for interstate transportation, and (2) because the Barnett truck in question was used for transportation, including transportation of hazardous materials, by Western as a licensed ICC motor carrier and was insured under the Travelers' policy procured by and issued to Western in order to meet its financial responsibility obligations as an ICC carrier, the MCS–90 Endorsement applies to the accident involving the Carrieres and the truck driven by Barnett. Accordingly, the motions for summary judgment filed by the Carrieres and by Barnett, Nobel and Western will be granted and the motions for summary judgment filed by Travelers will be denied.

### JUDGMENT

In accordance with the Memorandum Ruling issued on this date,

IT IS ORDERED that the MCS–90 Endorsement in the excess policy issued by The Travelers Indemnity Co. of Illinois applies to the final judgment rendered in

favor of the Carrieres against Western American Specialized Transportation Services, Inc. and Richard Wade Barnett, and that the motions for summary judgment filed by Dixie Carriere and Chris Carriere, individually and on behalf of their minor children, Kelly Carriere and Casey Carriere [Rec. Doc. 16] and by Richard Wade Barnett, Nobel Insurance Company and Western American Specialized Transportation Services, Inc. [Rec. Doc. 19] are GRANTED.

IT IS FURTHER ORDERED that the motions for summary judgment filed by The Travelers Indemnity Co. of Illinois [Rec. Docs. 24 & 39] are DENIED and Travelers' claims, with the exception of Travelers' cross claim against Nobel Insurance Company [Rec. Doc. 30], are DISMISSED WITH PREJUDICE.