CANAL INDEMNITY COMPANY,
Plaintiff,

v.

WILLIAMS LOGGING AND TREE
SERVICES, INC., et al.,
Defendants.

Civil Action No. H–09–3333.

United States District Court,
S.D. Texas.

April 21, 2010.

George T. Jackson, Burck Lapidus et al., Houston, TX, for Plaintiff.

Bennie D. Rush, Attorney at Law, Huntsville, TX, Daniel Shaw Clifford, Law Offices of Lennon C. Wright, Houston, TX, for Defendants.

Opinion on Summary Judgment

LYNN N. HUGHES, District Judge.

*1. Background.*

Willie Williams owns a logging company, Williams Logging and Tree Services, Inc. After checking in with his crew one morning, he left for a dental appointment. He was driving his company car, a 2003 GMC Sierra 2500 pickup, to the dentist when he hit a motorcyclist in Huntsville, Texas. The injured man sued Williams and Log-

ging in state court in the lawsuit styled *Gregory Hardy v. Williams Logging & Tree Services, Inc. and Willie Williams*, numbered 23761, in the 278th District Court, Walker County, Texas.

The title for the pickup is in the name of "Willie · Williams doing business as Williams Logging and Tree Services, Inc." Williams drove the pickup to work and carried gasoline and diesel in it to fuel other vehicles and tools at the work site. He insured it with a policy that had $50,000 per person / $100,000 per occurrence / $50,000 property damage limits per accident. After the accident, that policy paid its limit to the injured person.

Logging had also purchased surplus liability coverage from Canal Indemnity Company with a policy limit of $1,000,000. The Canal policy covered vehicles listed in the policy. The pick-up was not listed. Logging argues that while the pickup was not listed in the policy, the attached MCS–90 endorsement and Form–F endorsement oblige Canal to indemnify it for a judgment in the underlying suit.

Logging concedes that Canal had no duty to defend it in the underlying lawsuit.

### 2. MCS–90.

■ The MCS–90 is a public-liability endorsement that interstate motor carriers are required to have under the Motor Carrier Act of 1980. 49 U.S.C. § 13906 (2006). The MCS–90 form is proof that the carrier has the required minimum level of insurance. *T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 670 (5th Cir.2001). Even if the MCS–90 is attached to a policy that covers only listed vehicles, it applies to all vehicles that have statutory insurance requirements under the Motor Carrier Act. *Canal Ins. Co. v. First Gen. Ins. Co.*, 889 F.2d 604, 608 (5th Cir.1989), *modified by* 901 F.2d 45 (5th Cir.1990).

The MCS-90 says that the motor carrier has to pay:

any final judgment recovered against the insured for public liability resulting from the negligent operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.

Logging says that because the pickup is not listed on the policy, it is covered by the catch-all MCS–90. The pickup, though, does not transport cargo for hire as contemplated in the Motor Carrier Act and regulations of the Federal Motor Carrier Safety Administration. A motor carrier is "a person providing motor vehicle transportation for compensation." 49 U.S.C. 13102(12) (2006). While Logging's hauling trucks may be regulated by the Act, the pickup does not transport items for compensation. It transports Williams as a cost of doing business. That Logging has some cans of gas and or even tools to service the other vehicles in the truck-bed does not transform this company car into motor carrier.

The law defines a commercial motor vehicle as one that weighs over 10,000 pounds, transports at least 8 people for compensation or 15 people without compensation, or transports hazardous material. 49 U.S.C. § 31132 (2006). It specifically excludes vehicles with a gross weight rating of less than 10,000 pounds from the liability insurance requirements unless it is used to transport hazardous material. 49 U.S.C. § 31139(h) (2006). These definitions are incorporated in the federal regulations promulgated by the Secretary of Transportation. *See* 49 C.F.R. § 387.5, 387.7, 387.9, 390.5.

The pickup's gross vehicle rating is less than 10,000 pounds. Logging cites only one case that applies the MCS–90 to a pickup—and that pickup was hauling paints and solvents, classified as hazardous materials by the regulations. This, as the court recognized, placed it squarely within the statutory exception for minimum weight. *Travelers Indemnity Co. of IL v. Western Amer. Spec. Trans. Serv., Inc.*, 235 F.Supp.2d 522, 531 (W.D.La.2002).

The court cannot ignore the statutory authorization for and regulations governing the existence and applicability of the MCS–90. The use of the pickup was—at best—remotely related to the operation of a motor carrier. Logging's reading would expand liability coverage to company cars for UPS or Federal Express executives. The statutes are about safety regulations for motor carriers and the insurance endorsements that are legally mandated for them.

### 3. Form F.

■ Form F is the Texas state counterpart to the MCS–90. Texas law requires that motor carriers operating in the state have minimum bodily injury and property damage liability insurance. Tex. Transp. Code Ann. § 643.101. The law defines a commercial motor vehicle as one that is above 26,000 pounds, transports more than 15 people, or transports hazardous material. Tex. Transp. Code Ann. § 548.001, 43 Tex. Admin. Code § 28.2(6). Commercial motor vehicles must maintain $500,000 of insurance. 43 Tex. Admin. Code § 18.16(a)(8).

Logging asks the court again to look only within the corners of Form F and ignore the detailed laws and regulations on commercial motor vehicles. Even doing as it asks, its interpretation is untenable. Form F states that the form itself is proof of financial responsibility "under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction" and that it "amends the policy to provide insurance ... in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required...." One must refer to Texas law to know what Form F means; otherwise, the form does nothing. The form is the product of Texas' regulation of motor carriers. Logging's pickup is beyond its coverage.

### 4. Conclusion.

On the agreement of the parties, Canal Indemnity Company has no duty to defend Willie Williams or Williams Logging & Tree Services, Inc., under the Canal policy for claims made in the lawsuit styled *Gregory Hardy v. Williams Logging & Tree Services, Inc. and Willie Williams*, numbered 23761, in the 278th District Court, Walker County, Texas.

Because the pickup is not transporting cargo for hire as contemplated by federal or state law, Canal Indemnity Company's motion for summary judgment will be granted. Canal has no duty to indemnify Willie Williams or Williams Logging & Tree Services, Inc., under the Canal policy, MCS–90, or Form F for a judgment entered in the lawsuit styled *Gregory Hardy v. Williams Logging & Tree Services, Inc. and Willie Williams*, numbered 23761, in the 278th District Court, Walker County, Texas.

#### Final Judgment

1. Canal has no duty to defend Willie Williams or Williams Logging & Tree Services, Inc., under the Canal policy, MCS–90, or Form F for claims made in the lawsuit styled *Gregory Hardy v. Williams Logging & Tree Services, Inc. and Willie Williams*, numbered

23761, in the 278th District Court, Walker County, Texas.

2. Canal has no duty to indemnify Willie Williams or Williams Logging & Tree Services, Inc., under the Canal policy, MCS–90, or Form F for a judgment entered in the lawsuit styled *Gregory Hardy v. Williams Logging & Tree Services, Inc. and Willie Williams,* numbered 23761, in the 278th District Court, Walker County, Texas.