[No. A131656. First Dist., Div. One. Feb. 29, 2012.]

CENTURY-NATIONAL INSURANCE COMPANY, Cross-complainant and Respondent, v.
GLOBAL HAWK INSURANCE COMPANY, Cross-defendant and Appellant.

▮▮▮▮▮▮▮▮▮▮▮

**COUNSEL**

Dominic G. Flamiano for Cross-defendant and Appellant.

Haight Brown & Bonesteel, Valerie A. Moore and Christopher Kendrick for Cross-complainant and Respondent.

**OPINION**

**MARCHIANO, P. J.—**

### INTRODUCTION

This is an appeal from a judgment entered after the trial court granted summary adjudication in favor of cross-complainant and respondent Century-National Insurance Company (Century-National) against cross-defendant and appellant Global Hawk Insurance Company (Global Hawk). The lawsuit arises from a freeway collision when a truck driven by an employee of an interstate trucking company (Global Hawk's insured) rear ended a garbage truck owned by a sanitation company (Century-National's insured) and injured its employee driver. When the interstate trucker's insurance carrier, Global Hawk, refused to pay the injured driver's claim for damages, the injured driver obtained uninsured motorist benefits under his employer's insurance policy, issued by Century-National. Century-National then sought reimbursement from Global Hawk.

The question presented in this appeal is whether the interstate trucker's insurer, Global Hawk, must reimburse the sanitation company's insurer, Century-National, for the uninsured motorist benefits it paid to its insured's employee. The trial court answered that question in the affirmative, and granted Century-National's motion for summary judgment on its cross-complaint against Global Hawk. Because Global Hawk was liable for the collision under the terms of the MCS-90 endorsement that it provided to its insured, the interstate trucker, we will affirm the judgment.

### HISTORICAL AND PROCEDURAL FACTS

Sebastian Padilla, an employee of Bluewater Environmental Services, Inc. (Bluewater), was injured when the sanitation truck he was driving for his employer was rear ended by a 2000 Freightliner truck driven by Sarkis Zardaryan, an employee and business partner of Zepyur Shamamyan, doing business as E & Z Express Trucking (E & Z or E & Z Trucking). Padilla

made a claim for his bodily injuries against E & Z's insurer, Global Hawk, which denied the claim, because Zardaryan's truck was not listed in Global Hawk's policy.

However, because E & Z Trucking is a motor carrier engaged in interstate trucking, Global Hawk's policy carried a financial responsibility endorsement (MCS-90 endorsement), required by federal law. The endorsement stated, in relevant part: "In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for *public liability* resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 *regardless of whether or not each motor vehicle is specifically described in the policy* . . . . It is understood and agreed that no condition, provision, stipulation, or limitations contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of [the] insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement." (Italics added). The Federal Motor Carrier Safety Administration issued motor carrier permit No. 1243942 to Zepyur Shamamyan doing business as E & Z Express Trucking. The MCS-90 endorsement obligated Global Hawk to provide coverage under certain conditions for all of its insureds' vehicles including the truck not described in the policy.

Because Global Hawk denied Padilla coverage, he submitted a claim for uninsured motorist (UM) benefits under his employer's insurance, issued by Century-National. After verifying that Global Hawk denied coverage, Century-National paid Padilla's claim up to its policy limit of $100,000 for UM benefits, and Padilla executed an UM subrogation agreement. Global Hawk subsequently submitted a notice of cancellation of E & Z's policy to the U.S. Department of Transportation.

Global Hawk then sued its insureds, E & Z Trucking and Shamamyan, as well as Zardaryan, Padilla, Bluewater, Century-National, the State Compensation Insurance Fund and 100 Does in Alameda County Superior Court, for rescission of the contract and declaratory relief, on the ground that E & Z's owner,

Shamamyan, and employee/partner Zardaryan, "misrepresented and/or concealed material facts from Global Hawk" in the insurance application. Global Hawk sought a judicial declaration that the policy it issued to Shamamyan was "void by reason of such defendants' breach of the 'Concealment, Misrepresentation or Fraud' General Condition of the policy, or alternatively that the . . . policy by its terms affords no coverage whatsoever for the underlying claims."

Century-National filed a cross-complaint for reimbursement of the $100,000 it paid out in UM benefits to Padilla, alleging causes of action for subrogation, equitable indemnity, contribution and declaratory relief. Century-National named Global Hawk, Shamamyan, E & Z Trucking, Zardaryan, and Does 1 to 10 as cross-defendants.

Shamamyan and Zardaryan defaulted on Century-National's cross-complaint, and default judgments were entered against them. Century-National filed a motion for summary adjudication, which the trial court granted in part and denied in part. Specifically, the trial court denied the motion as to Global Hawk's cause of action for rescission, "because it does not affect Century-National's rights under the MCS-90 endorsement . . . ." The trial court granted Century-National's motion as to its right to reimbursement. The trial court found: "There is no triable issue of material fact as to Global Hawk's duty under the MCS-90 endorsement to its insurance contract to reimburse uninsured motorist benefits paid by Century-National for a June 13, 2006 truck accident involving Global Hawk's insured. [¶] [3.] Century-National offered uncontroverted, admissible evidence that . . . [a.] Global Hawk truckers liability policy no. C-1004-575 attached an MCS-90 endorsement that would have provided coverage for a trucking accident that occurred on June 13, 2006, in which Century-National's insured, Sebastian Padilla, was injured by Sarkis Zardaryan, who was operating a vehicle while employed by Global Hawk's named insured, Zepyur Shamamyan dba EZ Express[;] . . . [b.] the MCS-90 endorsement was in effect on June 13, 2006 and that the [MCS]-90 had not been cancelled by Global Hawk in accordance with 49 *C.F.R.* § 387.313 as of . . . the June 13, 2006 accident[;] [¶] [4.] . . . that [Century-National] paid $100,000 in uninsured motorist benefits to Padilla and that it is subrogated to the rights of Padilla under the Century-National policy against any person legally liable for the injuries to Padilla[; and] . . . [c.] that it sued Zepyur Shamamyan ('Shamamyan') and Sarkis Zardaryan ('Zardaryan') in this action as the persons responsible for Padilla's injuries and that a default was entered against Shamamyan and Zardaryan. [¶] [5.] Summary judgment is appropriate because the parties do not dispute the underlying facts, only the legal effect of those facts when applied to the terms of the Century-National insurance policy." (Original italics.)

Judgment was entered against Shamamyan, Zardaryan, and Global Hawk in favor of Century-National on the latter's cross-complaint in the amount of $100,000 plus interest. Global Hawk timely appeals.

## CONTENTION

Global Hawk's sole contention on appeal is that it is not responsible for reimbursing Century-National for the UM benefits Century-National paid to Padilla because, under federal law, an MCS-90 endorsement does not make one insurance company liable to reimburse another insurance company that covered the loss under its own policy. In other words, Global Hawk claims that MCS-90 liability is not "triggered" when the dispute at issue is between two or more insurance companies, about apportioning the cost of compensating the injured plaintiff. It only applies when the injured plaintiff directly sues the insurance company, and the underlying insurance policy would not have covered the loss but for the MCS-90 endorsement. As we discuss below, Global Hawk's argument is mistaken, and it is liable for reimbursement to Century-National.

## DISCUSSION

■ We review the grant of summary judgment de novo. (*Castro v. Budget Rent-A-Car System, Inc.* (2007) 154 Cal.App.4th 1162, 1170 [65 Cal.Rptr.3d 430] (*Castro*).) Federal law applies to the operation and effect of the MCS-90 endorsement. (*John Deere Ins. Co. v. Nueva* (9th Cir. 2000) 229 F.3d 853, 856 (*John Deere*); *Castro, supra*, at p. 1168 & fn. 3.) However, issues of coverage relating to an insurance policy are governed by state law. (Dennis, Corry, Porter & Smith, L.L.P., Motor Carrier Liability (CCH 2009) ¶ 2021 [2009 WL 3603929]; see also *Frontier Oil Corp. v. RLI Ins. Co.* (2007) 153 Cal.App.4th 1436, 1461–1462 [63 Cal.Rptr.3d 816].)

■ Global Hawk does not dispute that its insured, E & Z Trucking, is a motor carrier within the meaning of the Motor Carrier Act of 1980 (MCA; Pub.L. No. 96-296, July 1, 1980, 94 Stat. 793). (49 U.S.C. § 10101 et seq.) "The MCA and the subsequent regulations promulgated by the Federal Motor Carrier Safety Administration (FMCSA) require interstate motor carriers to obtain 'a special endorsement . . . providing that the insurer will pay within policy limits any judgment recovered against the insured motor carrier for liability resulting from the carrier's negligence, whether or not the vehicle involved in the accident is specifically described in the policy.' [Citation.] In particular, the MCA provides that a commercial motor carrier may operate only if registered to do so, 49 U.S.C. § 13901, and must be 'willing and able to comply with . . . [certain] *minimum financial responsibility requirements,'*

*id.* § 13902(a)(1) [(italics added)]."[1] (*Carolina Casualty Ins. Co. v. Yeates* (10th Cir. 2009) 584 F.3d 868, 873–874, fns. omitted (*Yeates*).) Proof of minimum financial responsibility can be demonstrated by (1) an MCS-90 endorsement issued by an insurer or insurers, (2) a surety bond for public liability issued by a surety, or (3) self-insurance, if authorized by the Federal Motor Carrier Safety Administration (FMCSA). (49 C.F.R. § 387.7(d)(1)–(3) (2011); *Yeates,* at p. 874.) In this case, E & Z chose the MCS-90 option, and Global Hawk, its insurer, issued the required endorsement.

Congress passed the MCA "[a]s part of its push to deregulate the trucking industry, increase competition, reduce entry barriers, and improve quality of service." (*Yeates, supra,* 584 F.3d at p. 873.) The purpose of the requirement that motor carriers demonstrate minimum financial responsibility is to address the concerns of legislators who " 'fear[ed] that increased safety problems [would] result from the expanded entry provided in [the MCA]' and that 'increased entry [would] open the highways to truckers who might have little concern for the safe operation and maintenance of their vehicles, thereby posing a threat to those who share the highways with them.' [Citation.] The MCA, therefore, included provisions addressing these concerns as well as the 'abuses that had arisen in the interstate trucking industry which threatened public safety, including the use by motor carriers of leased or borrowed vehicles to avoid financial responsibility for accidents that occurred while goods were being transported in interstate commerce.' " (*Ibid.;* see *Canal Ins. Co. v. Distribution Services, Inc.* (4th Cir. 2003) 320 F.3d 488, 489.)

■ Global Hawk argues that the MCS-90 endorsement attached to the liability insurance policy issued to E & Z Trucking does not obligate it to reimburse the injured party's insurance company for its payment of UM benefits to Padilla because an MCS-90 insurer's duty to pay arises only when "(1) the underlying insurance policy to which the endorsement is attached does not otherwise provide coverage, *and* (2) either no other insurer is available to satisfy the judgment against the motor carrier, or the motor carrier's insurance coverage is insufficient to satisfy the federally-prescribed minimum levels of financial responsibility." (*Yeates, supra,* 584 F.3d at p. 878, original italics.) Here, the Global Hawk policy did not provide coverage for the unlisted truck and no other insurer was available to satisfy the judgment obtained against Global Hawk's insured E & Z Trucking, thus triggering the safety net coverage provided by the MCS-90 endorsement.

■ Global Hawk contends that, Century-National, the *injured party's insurer,* is an "other insurer" whose policy with Bluewater gets Global Hawk off the MCS-90 hook. We see it differently because "other insurer" within the

---

[1] A motor carrier transporting property must demonstrate financial responsibility of "at least $750,000." (49 U.S.C. § 31139(b)(2).)

meaning of the FMCSA and MCS-90 endorsement means any other insurer of the tortfeasor *motor carrier*, not the insurer of the person injured by the motor carrier. This was made plain in the *Yeates* case, where the court explained: "[T]he MCS-90 endorsement operates only to guarantee a source of payment of a judgment, and does not relieve *the motor carrier or its liability insurers* (assuming the respective insurance policies extend to the accident at issue) of their duty to satisfy an injured party's judgment against the carrier. 'The peculiar nature of the MCS-90 endorsement grants the judgment creditor the right to demand payment directly from the insurer, and simultaneously grants the insurer the right to demand reimbursement from the insured.' [Citation.] A motor carrier may be required to reimburse the MCS-90 insurer for any payout the insurer would not otherwise have been obligated to make. The endorsement thereby presents neither a windfall for the motor carrier, nor does it alter the motor carrier's coverage *under its other insurance policies*. . . . [¶] . . . [¶] Consequently, when an injured party obtains a negligence judgment against a motor carrier, an insurer's obligation under the MCS-90 endorsement is not triggered unless (1) the underlying insurance policy (to which the endorsement is attached) does not provide liability coverage for the accident, and (2) *the [motor] carrier's other insurance coverage* is either insufficient to meet the federally-mandated minimums or non-existent. Once the federally-mandated minimums have been satisfied, however, the endorsement does not apply." (*Yeates, supra,* 584 F.3d at p. 879, italics added.) Any other interpretation—for instance, one which places the onus of insuring against accidents caused by interstate truckers on the accident victims—would defeat the purpose of the regulations adopted to implement the FMCSA, which is to " 'assure that injured members of the public would be able to obtain judgments collectible against negligent authorized carriers.' " (*T.H.E. Ins. Co. v. Larsen Intermodal Services, Inc.* (5th Cir. 2001) 242 F.3d 667, 672.)

The first party coverage provided to the injured Padilla by Century-National is not "other insurance" available to satisfy the judgment against E & Z Trucking and Shamamyan. It provides UM coverage directly to the injured driver and does not involve third party liability coverage to satisfy the liability of E & Z Trucking and Shamamyan.

Our conclusion is reinforced by our review of the cases cited by Global Hawk. All involved disputes between the motor carrier and its insurer or between the motor carrier's various insurance providers over which one or more must bear the cost of compensating the party injured by the motor carrier. None involves a dispute between the motor carrier or its insurer(s) and the injured party and his or her insurer. (*Yeates, supra,* 584 F.3d 868 [dispute between motor carrier's two insurers]; *Canal Ins. Co. v. Carolina Casualty Ins. Co.* (1st Cir. 1995) 59 F.3d 281 [same]; *Kline v. Gulf Ins. Co.* (6th Cir. 2006) 466 F.3d 450 [dispute between bankrupt self-insured trucker,

its umbrella insurer and its excess liability insurer]; *Canal Ins. Co. v. Distribution Services, Inc., supra,* 320 F.3d 488 [dispute between insurers for trucking company and leasing company from which trucker leased the truck involved in the accident]; *T.H.E. Ins. Co. v. Larsen Intermodal Services, Inc., supra,* 242 F.3d 667 [dispute between motor carrier's liability insurer and its insured trucking company for reimbursement of amounts paid in settlement of third party personal injury claims arising from collision]; *Harco National Ins. Co. v. Bobac Trucking Inc.* (9th Cir. 1997) 107 F.3d 733 [dispute between motor carrier and its liability insurer for reimbursement of cost of defending trucker in underlying suit]; *Occidental Fire & Casualty Co. v. International Ins. Co.* (7th Cir. 1986) 804 F.2d 983 [dispute between trucking company's insurer and truck lessor's insurer]; *John Deere, supra,* 229 F.3d 853 [dispute between insured motor carrier and its liability insurer]; *John Deere Ins. Co. v. Truckin' U.S.A.* (5th Cir. 1997) 122 F.3d 270 [dispute between insurers for trucking company and owner of truck involved in fatal collision]; *Herrod v. Wilshire Ins. Co.* (D. Utah 2010) 737 F.Supp.2d 1312 [dispute between separate insurers for trailer and truck involved in fatal collision between motorist and trailer truck].)

■ In sum, under federal law, the MCS-90 endorsement attached to Global Hawk's insurance policy with its insured, E & Z Trucking, obligated Global Hawk to compensate Bluewater's employee, Mr. Padilla, for the injuries he suffered when the garbage truck he was driving was negligently rear ended by the truck driven by E & Z's employee, even though the truck driven by E & Z's employee was not listed in the underlying policy. The fact that Global Hawk erroneously denied coverage, causing Bluewater's insurer to compensate Mr. Padilla under its UM provision, does not relieve Global Hawk of its responsibility to cover the loss under the MCS-90 endorsement. Furthermore, under California's Insurance Code, and Century-National's subrogation agreement with Mr. Padilla, Century-National stood in Mr. Padilla's shoes and was entitled to sue the tortfeasor, E & Z Trucking, and its insurer, Global Hawk, for Mr. Padilla's injuries and for reimbursement of the UM benefits it paid out to Mr. Padilla. (Ins. Code, § 11580.2, subd. (g);[2] *Miller v. Ellis* (2002) 103 Cal.App.4th 373, 381, fn. 4 [126 Cal.Rptr.2d 667] [subrogated insurer stands in the shoes of its insured].)

Century-National, as subrogee, obtained default judgments against Shamamyan, doing business as E & Z Trucking, and Zardaryan. Under both federal law and California law, Global Hawk became liable to Century-National due to the safety net provided by the intent and language of the

---

[2] Insurance Code section 11580.2, subdivision (g) provides: "The insurer paying a claim under an uninsured motorist endorsement or coverage shall be entitled to be subrogated to the rights of the insured to whom the claim was paid against any person legally liable for the injury or death to the extent that payment was made. The action may be brought within three years from the date that payment was made hereunder."

MCS-90 endorsement. There being no disputed issues of fact, the trial court correctly granted Century-National's motion for summary adjudication.

## CONCLUSION

Century-National is entitled to reimbursement from Global Hawk under its MCS-90 endorsement and Insurance Code section 11580.2. The trial court properly granted Century-National's motion for summary adjudication.

## DISPOSITION

The judgment is affirmed.

Margulies, J., and Dondero, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 13, 2012, S201538.