# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1595

_____

Tri-National, Inc.

*Plaintiff - Appellee*

v.

Larry D. Yelder; Yelder-N-Son Trucking, Inc.

*Defendant*s

Canal Insurance Company

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: January 13, 2015
Filed: March 20, 2015

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

RILEY, Chief Judge.

This insurance dispute presents an issue of first impression in our circuit: whether the federally mandated Motor Carrier Act (MCA) of 1980[1] MCS-90 endorsement for motor carriers requires a tortfeasor's insurer to compensate an injured party when the injured party has already been compensated by its own insurer. The district court[2] decided the MCS-90 endorsement requires such compensation, and we agree. Having appellate jurisdiction under 28 U.S.C. § 1291, we affirm the district court's summary judgment.

## I.    BACKGROUND

On June 14, 2007, while operating a semi tractor and trailer, Larry D. Yelder Sr., an employee of Yelder-N-Son Trucking, Inc. (collectively, Yelder defendants), collided with a Tri-National, Inc. truck, causing extensive property damage. Tri-National filed a claim with its insurer, Harco Insurance Company, which paid Tri-National $91,100 and retained a subrogation interest in the claim.

At the time of the accident, the Yelder defendants were insured by Canal Insurance Company under policy number 488142 (Canal policy), which included an MCS-90 endorsement. In 2010, in the District Court for the Middle District of Alabama, Canal sought a declaratory judgment against the Yelder defendants and Harco, among others, declaring (1) Canal had no duty to defend or indemnify the Yelder defendants under the Canal policy, and (2) the MCS-90 endorsement did not require Canal to satisfy Harco's subrogation claim. The Alabama court entered default judgment against the Yelder defendants only, stating Canal had no duty to defend or indemnify the Yelder defendants under the Canal policy, but the Alabama court made no declaration about the MCS-90 endorsement.

---

[1]Pub. L. No. 96-296, 94 Stat. 793.

[2]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri.

In June 2010, Harco filed a motion to dismiss for failure to join an indispensable party, Tri-National. At a pretrial conference, Harco represented to the Alabama court that it was "not [Harco's] intention to ever make a claim against [Canal]," and that it "would be Tri-National who would go after Canal, not Harco." Canal responded that "[i]f it's on the record that [Harco] won't go after Canal, then we're okay with that." The Alabama district court then dismissed Harco without prejudice "[b]y agreement of the parties made during a pretrial conference."

Tri-National sued the Yelder defendants in Missouri state court and in July 2012 obtained a $91,100 default judgment. In November 2012, Tri-National filed a petition for equitable garnishment in Missouri state court against Canal in an effort to collect on the Missouri state court's default judgment. According to Tri-National, the decision to file the petition was Harco's, Tri-National had no input in the decision, and any proceeds from the garnishment action are "supposed to go directly to Harco."

Claiming diversity jurisdiction under 28 U.S.C. § 1332(a)(1), Canal removed the action to the federal district court for the Eastern District of Missouri. On opposing motions for summary judgment, the district court granted Tri-National's motion and denied Canal's. Canal appeals, claiming the district court erred by finding (1) Tri-National was the real party in interest, rather than its insurer, Harco; (2) the Alabama dismissal did not bar Tri-National's suit for equitable garnishment in Missouri; and (3) the MCS-90 endorsement required Canal to satisfy Tri-National's default judgment against the Yelder defendants.

## II.   DISCUSSION

A district court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the district court's grant of

summary judgment de novo. See, e.g., Allstate Indem. Co. v. Rice, 755 F.3d 621, 623 (8th Cir. 2014).

### A.  Real Party in Interest

Canal contends the district court erred by finding Tri-National, not Harco, is the real party in interest in this case. See Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest."). When removing the action to federal court, Canal asserted diversity jurisdiction, and we consult Missouri substantive law to determine whether Harco, as the subrogee, is the real party in interest. See Cascades Dev. of Minn., LLC v. Nat'l Specialty Ins., 675 F.3d 1095, 1098 (8th Cir. 2012) ("A 'real party in interest is the person who, under governing substantive law, is entitled to enforce the right asserted.'" (quoting Iowa Pub. Serv. Co. v. Med. Bow Coal Co., 556 F.2d 400, 404 (8th Cir. 1977))); cf. Dubuque Stone Prods. Co. v. Fred L. Gray Co., 356 F.2d 718, 723 (8th Cir. 1966) ("In diversity cases, state substantive law is consulted to determine whether an assignee qualifies as a real party in interest under Rule 17(a).").

Although Tri-National received $91,100 in payment for its loss from Harco, Tri-National, not Harco, holds the default judgment from the Missouri state court against the Yelder defendants. In Missouri, Tri-National, as "the judgment creditor[,] may proceed in equity against" the Yelder defendants and Canal "to reach and apply the insurance money to the satisfaction of the judgment," Mo. Rev. Stat. § 379.200, and Harco may not. "Unlike some states, which provide that legal title to a property damage claim passes to the injured party's insurer once the insurer pays the injured party's claim, Missouri provides that the legal title to the cause of action remains in the insured, and that the insurer's only interest is an equitable right to subrogation." Hagar v. Wright Tire & Appliance, Inc., 33 S.W.3d 605, 610 (Mo. Ct. App. 2000). "The *exclusive right* to pursue the tortfeasor remains with the insured, which holds the proceeds for the [subrogee] insurer." Keisker v. Farmer, 90 S.W.3d 71, 74 (Mo. 2002) (en banc) (emphasis added). "In a subrogation situation, since the insured still

holds the legal right to the claim, the insurer cannot sue the tortfeasor directly but must wait and assert its subrogation interest against any recovery the insured makes against the tortfeasor." Hagar, 33 S.W.3d at 610.

"The only relevant exception to this rule is when the insured assigns his or her property damage claim against the tortfeasor to the insurer. . . . An assignment . . . gives the insurer full legal title to the claim and permits the insurer to pursue it against the tortfeasor." Id. With no evidence of an assignment in the record before us, Tri-National, not Harco, is the only appropriate plaintiff to bring this equitable garnishment action under Missouri substantive law.

Canal cites United States v. Aetna Casualty & Surety Co., 338 U.S. 366 (1949), where the Supreme Court decided an "important question under the Federal Tort Claims Act" (FTCA)—whether "an insurance company [may] bring suit in its own name against the United States upon a claim to which it has become subrogated by payment to an insured who would have been able to bring such an action." Id. at 367-68. In Aetna Casualty, the Court affirmed three courts of appeals who had allowed the insurers' suits to proceed. See id. at 368-69, 383. The Court analyzed the question in consideration of a statute that forbade assignment of claims against the United States, at least partly "to prevent possible multiple payment of claims." Id. at 368, 373. The Court concluded "it was the understanding of Congress that subrogation claims were not within the bar of [the FTCA anti-assignment statute] when it passed the [FTCA]." Id. at 376. The Supreme Court then stated,

> If then, [the anti-assignment statute] is inapplicable, the [United States] Government must defend suits by subrogees as if it were a private person. Rule 17(a) of the Federal Rules of Civil Procedure, 28 U.S.C., which were specifically made applicable to Tort Claims litigation, provides that "Every action shall be prosecuted in the name of the real party in interest," and of course an insurer-subrogee, who has substantive equitable rights, qualifies as such. If the subrogee has paid

-5-

an entire loss suffered by the insured, it is the only real party in interest
and must sue in its own name.

Id. at 380-81.

Canal argues we should apply this last statement from Aetna Casualty in this
case—a suit based on diversity of citizenship, not the FTCA—and find Harco, the
subrogee, is the real party in interest. We question whether this extension of Aetna
Casualty—a case whose reasoning is firmly grounded on the fact that the United
States was a defendant in the FTCA suit—is proper. See, e.g., St. Paul Fire & Marine
Ins. Co. v. Universal Builders Supply, 409 F.3d 73, 81 (2d Cir. 2005) (opining that
in Aetna Casualty, "the Supreme Court[] discuss[ed] the requirements of Rule 17(a)
in the context of subrogation" and making no reference to the FTCA); Krueger v.
Cartwright, 996 F.2d 928, 931-32 (7th Cir. 1993) ("The general rule in federal court
is that if an insurer has paid the entire claim of its insured, the insurer is the real party
in interest under Federal Rule of Civil Procedure 17(a) and must sue in its own
name." (citing Aetna Casualty, 338 U.S. at 380-81)); Dudley v. Smith, 504 F.2d 979,
983 (5th Cir. 1974). We do agree with the Dudley court's observation that "where
the suit is by the insured . . . for the full amount of the loss, . . . [a]ny multiplicity of
suit risk can be obviated by final judgment of the district court." Id. We conclude
Canal is at no risk of being subjected to more than one suit here, and a reading of
Aetna Casualty does not change our conclusion to apply Missouri substantive law
establishing Tri-National as the real party in interest.

## B.    Alabama Litigation

Canal claims the Alabama court's judgment precludes the Missouri federal
district court from considering this case under the doctrines of res judicata (claim
preclusion) and collateral estoppel (issue preclusion), which bar a rehearing of the
issue here.

-6-

"'The law of the forum that rendered the first judgment controls the res judicata analysis.'" C.H. Robinson Worldwide, Inc. v. Lobrano, 695 F.3d 758, 764 (8th Cir. 2012) (quoting Laase v. Cnty. of Isanti, 638 F.3d 853, 856 (8th Cir. 2011)). Because the first judgment here was by the United States District Court for the Middle District of Alabama, sitting in diversity, "we must give that federal diversity judgment the same claim-preclusive effect that [Alabama] state courts would give to a state court judgment." Id. (citing Semtek Int'l., Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001)). In Alabama, in order for either res judicata or collateral estoppel to bar a second claim, a final judgment on the merits of the prior claim is required. See, e.g., Equity Res. Mgmt., Inc. v. Vinson, 723 So. 2d 634, 636 (Ala. 1998) (res judicata); Shelby Cnty. Planning Comm'n v. Seale, 564 So. 2d 900, 901-02 (Ala. 1990) (collateral estoppel).

The Alabama court here entered two judgments. In the first, it granted a default judgment in favor of Canal as to the Yelder defendants only, stating Canal had no duty to defend or indemnify the Yelder defendants under the Canal policy and making no determination on the merits as to Canal's obligations under the MCS-90 endorsement to Tri-National (who was not a party to the suit) or even to Harco (who was a party). In the second judgment, the Alabama court dismissed Harco without prejudice "[b]y agreement of the parties," with the expressed understanding that "Tri-National is not a party so they can still sue [Canal]." We conclude the Alabama court did not render a prior final judgment on the merits as to Tri-National's present claim on the MCS-90 endorsement issue and therefore Tri-National's claim is not barred.[3] See Ex parte Sealy, LLC, 904 So. 2d 1230, 1236 (Ala. 2004) ("'The effect of a voluntary dismissal without prejudice is to render the proceedings a nullity and leave

---

[3]Canal also asserts Tri-National is judicially estopped from bringing this claim because Harco stated in the Alabama litigation that it did "not [intend] to ever make a claim against [Canal]." Like the district court, we find no inconsistency and note Harco stated "[it] would be Tri-National who would go after Canal, not Harco," which is exactly what has happened here.

the parties as if the action had never been brought.'" (quoting In re Piper Aircraft Distrib. Sys. Antitrust Litig., 551 F.2d 213, 219 (8th Cir. 1977))).

### C. MCS-90 Endorsement[4]

Canal argues the district court erred by finding the MCS-90 endorsement obligated Canal to reimburse Tri-National for its losses.

"Congress enacted the MCA, in part, to address abuses that had arisen in the interstate trucking industry which threatened public safety," where motor carriers attempted "to avoid financial responsibility for accidents that occurred while goods were being transported in interstate commerce." Canal Ins. Co. v. Distrib. Servs., Inc., 320 F.3d 488, 489 (4th Cir. 2003). "[T]he Secretary of Transportation issued a regulation mandating that every liability insurance policy covering a 'motor carrier' contain the MCS-90 endorsement." Id.; see 49 C.F.R. § 387.15, illus. I. "The MCS-90 provides a broad guaranty that the insurer will pay certain judgments incurred by the insured regardless of whether the motor vehicle involved is specifically described in the policy or whether the loss was otherwise excluded by the terms of the policy." Century Indem. Co. v. Carlson, 133 F.3d 591, 594 (8th Cir. 1998). "[T]he primary purpose of the MCS-90 is to assure that injured members of the public are able to obtain judgment from negligent authorized interstate carriers." John Deere Ins. Co. v. Nueva, 229 F.3d 853, 857 (9th Cir. 2000). "The operation and effect of the MCS-90 endorsement is a matter of federal law." Canal Ins., 320 F.3d at 492.

The MCS-90 endorsement states,

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within

---

[4]An MCS-90 Endorsement is an "Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the [MCA]." 49 C.F.R. § 387.15, illus. I.

the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. . . .

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

49 C.F.R. § 387.15, illus. I. "MCS-90 endorsements are not treated as coverage where *other insurance policies are available* to provide full coverage for the victim's injuries." Nat'l Indem. Co. v. Ozark Mountain Sightseeing, Inc., 46 F. App'x 864, 865 (8th Cir. 2002) (unpublished per curiam) (emphasis added); see also Carolina Cas. Ins. Co. v. Yeates, 584 F.3d 868, 871 (10th Cir. 2009) (en banc) (holding "the MCS-90 endorsement only applies where: (1) the underlying insurance policy to which the endorsement is attached does not provide coverage for the motor carrier's accident, *and* (2) the motor carrier's insurance coverage is either not sufficient to satisfy the federally-prescribed minimum levels of financial responsibility or is non-existent").

Canal urges us to deny coverage to Tri-National under the Yelder defendants' MCS-90 endorsement because *Tri-National's* insurance policy, through Harco, provided full compensation for Tri-National's injuries, and Tri-National has already been made whole for its losses by Harco. Canal proposes the injured party's own insurance be considered as other available insurance that would preclude coverage under the MCS-90 endorsement. See, e.g., Nat'l Indem., 46 F. App'x at 865. As the district court set out in detail, Canal tries to bolster its argument by citing cases that do not allow coverage under the MCS-90 endorsement as a resolution of the dispute

among various insurers of the tortfeasor motor carrier. But those cases do not address the situation here, where the benefit of the judgment is not for the tortfeasor's insurer and ultimately will go to Harco, the injured party's insurer, as subrogee.

We find Canal's proposal—that Tri-National must wait to receive payment on its claim with Harco until Tri-National receives payment on its default judgment against the Yelder defendants, likely years after the negligent act—untenable. Canal would have us remove the MCA's protection against negligent tortfeasors for members of the public who prudently carry their own insurance, shifting the burden of protection and the financial burden from the tortfeasor's insurer to the injured party's insurer. We find Canal's proposition "would defeat the purpose of the regulations adopted to implement the [MCA], which is to 'assure that injured members of the public would be able to obtain judgments collectible against negligent authorized carriers.'" Global Hawk Ins. Co. v. Century-Nat'l Ins. Co., 138 Cal. Rptr. 3d 363, 369 (Cal. Ct. App. 2012) (quoting T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc., 242 F.3d 667, 672 (5th Cir. 2001)[5]).

Previously, in a controversy among tortfeasors' insurers, one of whom purchased an assignment of the injured party's judgment against the tortfeasor and then sought contribution from the other tortfeasors' insurers, we stated that a policy "ensuring speedy satisfaction of judgments attributed to negligent truckers[] is best served by a rule that allows ultimate financial burdens to be allocated *after* injured members of the public are compensated." Redland Ins. Co. v. Shelter Mut. Ins. Co., 193 F.3d 1021, 1022 (8th Cir. 1999). Here too, we do not want to "encourage insurers" like Harco "to engage in wrangling over such allocations *before* the public

---

[5]The Fifth Circuit approved the reasoning of the First Circuit in Canal Insurance Co. v. Carolina Casualty Insurance Co., 59 F.3d 281, 283 (1st Cir. 1995), describing the MCS-90 obligation "as one of suretyship" and decided "the insurer's obligations under MCS-90 are triggered when the policy to which it is attached provides no coverage to the insured." T.H.E., 242 F.3d at 672.

is compensated," id. at 1022-23, rather than satisfy Tri-National's claim from the outset, as Harco did in this case.

We also note that under the MCS-90 endorsement, Canal has the right—and Harco does not—to demand reimbursement from the Yelder defendants. See 49 C.F.R. § 387.15, illus. I ("The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.").

We conclude that the fact Harco satisfied Tri-National's claim does not preclude Tri-National from asserting its rights as a member of the general public under the MCS-90 endorsement.

## III. CONCLUSION

We agree with the district court that the circumstance of Tri-National carrying its own insurance with Harco does not absolve Canal of its obligations under the MCS-90 endorsement. We affirm.

———————————————