Filed 4/18/23  United Specialty Ins. Co. v. Barriga CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| UNITED SPECIALTY INSURANCE COMPANY, | D080066 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2020-00013685-CU-IC-CTL) |
| LIBORIA AGUILAR BARRIGA et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Affirmed.

Su Barry; Herronlaw and Matthew V. Herron for Defendants and Appellants.

Law Offices of Daniel J. Spielfogel and Daniel J. Spielfogel for Plaintiff and Respondent.

The Estate of Salvador Rosales Aguilar and the decedent's parents, Liboria Aguilar Barriga and Aristeo Rosales Arreola (collectively the Aguilar parties), appeal from a final judgment entered after a summary judgment ruling in favor of United Specialty Insurance Company (USIC) in a declaratory relief action.  Based on our de novo review and interpretation of

the USIC insurance policy, we conclude that it provides no third-party liability coverage for a wrongful death action against the insured arising from a vehicle accident that occurred in Mexico, outside the policy's defined coverage territory. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Accident and Wrongful Death Action*

THX Transport, LLC (THX) transports goods for customers in the United States and Mexico. Most of its business involves shipments across the border. THX subcontracts with other shipping companies in Mexico.

In July 2017, Salvador Rosales Aguilar was riding his motorcycle in Tijuana, Mexico. A tractor-trailer truck owned and insured by THX made an illegal U-turn in front of him, causing him to crash. Aguilar was transported to a hospital in San Diego, where he died eight days later.

In July 2019, the Aguilar parties filed a wrongful death action in San Diego Superior Court against THX, the truck driver, and a Mexican company with which THX subcontracted.

B. *USIC Insurance Policy*

At the time of the accident, THX was insured under a commercial automobile policy issued by USIC. Section II of the policy (entitled "Liability Coverage") provides: "We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" Section III (entitled "Trailer Interchange Coverage") separately covers damages the insured was required to pay because of "loss" to a trailer it did not own or its equipment. Section IV (entitled "Physical Damage Coverage") separately covers "loss" to the insured's own covered auto or its equipment.

2

Section V of the policy (entitled "Truckers Conditions") sets forth specific conditions that apply "in addition to the Common Policy Conditions." One of these is labeled "Policy Period, Coverage Territory." It limits the policy coverage to " 'accidents' and 'losses' occurring . . . [w]ithin the coverage territory." The policy defines the "coverage territory" as follows:

> "a. The United States of America;
>
> "b. The territories and possessions of the United States of America;
>
> "c. Puerto Rico;
>
> "d. Canada; and
>
> "e. Anywhere in the world if:
>
>> "(1)    A covered 'auto' of the 'private passenger' type is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and
>>
>> "(2)    The 'insured's' responsibility to pay damages is determined in a 'suit' on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to."
>
> "We also cover 'loss' to, or 'accidents' involving, a covered 'auto' while being transported between any of these places."

Section VI sets forth additional definitions of terms used in the policy. It defines "bodily injury" as "bodily injury, sickness or disease sustained by a person including death resulting from any of these." It defines "loss" as "direct and accidental loss or damage." It defines "private passenger type" to mean "a private passenger or station wagon type 'auto' and includes an 'auto' of the pickup or van type if not used for business purposes."

3

The USIC policy includes endorsement form MCS-90, which is a federally required endorsement for motor carriers under sections 29 and 30 of the Motor Carrier Act of 1980. (49 U.S.C. §§ 13906, 31139.) The endorsement provides in relevant part:

> "The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured [*sic*], within the limits stated herein as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHA).

> "In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described [in] the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. . . .

> "However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and company."

C.     *USIC's Reservation of Rights Letter*

In October 2019, USIC sent THX a reservation of rights letter stating that it owed no duty to defend or indemnify THX in the wrongful death action because (1) the accident did not occur within the coverage territory; and (2) THX failed to give prompt notice of the accident. However, USIC agreed

4

to provide THX with a defense in the wrongful death action subject to a full reservation of rights.

D.    *Declaratory Relief Action*

In March 2020, USIC filed this declaratory relief action against THX, the Aguilar parties, and others.  The complaint sought a judicial determination that USIC owed no duty to defend or indemnify THX in the wrongful death action brought by the Aguilar parties.  THX failed to respond to the complaint and a default was entered against it.

E.    *Summary Judgment Motion*

In July 2021, USIC filed a motion for summary judgment or summary adjudication of issues.  USIC argued that it had no duty to defend or indemnify under the THX policy because:  (1) the accident did not occur within the coverage territory; and (2) THX failed to provide USIC with notice of the accident or loss.

In opposition, the Aguilar parties argued:  (1) the "loss" occurred within the coverage territory because Aguilar died in San Diego; (2) the policy provided coverage for transportation between the United States and "anywhere in the world"; (3) the coverage territory definition in the Truckers Conditions portion of the policy was not clear and conspicuous; (4) USIC had a duty to indemnify under the MCS-90 endorsement; and (5) USIC was not prejudiced by THX's alleged failure to give prompt notice.

In their statement of undisputed facts, the Aguilar parties admitted that the truck was not a "private passenger" type as defined in the USIC policy.

5

F.    *Summary Judgment Ruling*

The trial court issued a tentative ruling in favor of USIC, which it confirmed after hearing arguments at the hearing.

The court concluded that "coverage was limited to the territories and possessions of the United States of America, Puerto Rico, and Canada" and "[i]t is undisputed the accident occurred in Mexico."  The court further found that the "anywhere in the world" language of the policy by its terms applied only to "private passenger" type vehicles, and "it is undisputed this case did not involve a 'private passenger' type auto because it was a tractor-trailer unit used for business purposes."  The court rejected the theory that there was a covered "loss" just because Aguilar ultimately died in the United States.  The court also found that the policy's definition of the coverage territory was sufficiently conspicuous.  Finally, with respect to the MCS-90 endorsement, the trial court concluded that it was subject to the same territorial limitations as the rest of the policy.

The court entered a final judgment declaring that there was no coverage and that USIC had no duty to defend or indemnify THX in the wrongful death action as a matter of law.  The Aguilar parties filed a timely notice of appeal.

DISCUSSION

I

In the trial court, the Aguilar parties made five separate arguments for coverage under the USIC policy.  On appeal, they only pursue two of these arguments:  (1) their "loss" was suffered within the coverage territory because Aguilar died in the United States; and (2) there is coverage under the MCS-90 endorsement.  We review these issues de novo in a summary

6

judgment appeal. (*Ryan v. Real Estate of Pacific, Inc.* (2019) 32 Cal.App.5th 637, 642.)

A.   *No Third-Party Liability Coverage for Accident Outside Coverage Territory*

The Aguilar parties first argue that the Truckers Conditions of the policy provide coverage for " 'accidents' and 'losses' occurring . . . [w]ithin the coverage territory." Because Aguilar was transported to a hospital in the United States and died there after the accident, they assert that they suffered a covered "loss" within the coverage territory. We disagree.

Interpretation of an insurance policy is a question of law. (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115.) Insurance policies are contracts to which the ordinary rules of contractual interpretation apply. (*Ibid.*) We must generally give the terms used in the policy their ordinary and popular meaning. (*Ibid.*) We must also interpret those terms in context and give effect to every part of the policy, with each clause helping to interpret the other. (*Ibid.*) A policy provision is ambiguous only if it is susceptible to two or more reasonable constructions when considered within the context of the policy as a whole. (*Ibid.*) We will resolve any ambiguity in favor of the insured to protect the insured's reasonable expectation of coverage. (*Ibid.*)

Based on our review of the USIC policy as a whole, we conclude that there is no third-party liability coverage for an accident that occurred in Mexico. We begin with the overall structure of the policy. The policy contains three separate coverage sections, immediately followed by the additional Truckers Conditions. The three coverage sections are Liability Coverage, Trailer Interchange Coverage, and Physical Damage Coverage. The only coverage applicable here is the Liability Coverage.

7

The Liability Coverage applies to judgments against the insured (THX) for damages for bodily injury or property damage "caused by an 'accident'" from the use of a covered auto. The operative language of this Liability Coverage does not use the word "loss"—it only refers to damages for bodily injury or property damage caused by an "accident." By contrast, the word "loss" *is* used in connection with the separate Trailer Interchange Coverage (for damages the insured must pay for "loss" to a trailer it does not own) and Physical Damage Coverage (for "loss" to the insured's own auto or equipment).

The Truckers Conditions immediately following these three coverage sections set forth additional conditions applicable to all three types of coverage. One of these additional conditions limits coverage to " 'accidents' and 'losses' . . . [w]ithin the coverage territory." This is the provision the Aguilar parties rely on in asserting that Aguilar's death in the United States constituted a "loss" in the covered territory.

Construing the policy as a whole, however, we conclude that the phrase " 'accidents' and 'losses' " as used in this provision refers back to either "accidents" falling within the Liability Coverage or "losses" falling within the Trailer Interchange Coverage or Physical Damage Coverage. In other words, this provision of the Truckers Conditions limits the policy's Liability Coverage to "accidents" occurring within the coverage territory and limits the policy's Trailer Interchange Coverage and Physical Damage Coverage to "losses" occurring within the coverage territory. Because this case only involves the policy's Liability Coverage for liability resulting from an accident, and because it is undisputed that the accident occurred in Mexico outside the coverage territory, there is no coverage under the plain language of the policy.

8

The Aguilar parties' contrary interpretation would read the territorial provision of the Truckers Conditions in isolation is if it were a free-standing coverage provision for all types of accidents and losses occurring within the coverage territory. But it is not a separate coverage provision. The Truckers Conditions are additional conditions that apply to the coverages set forth in the preceding sections of the policy. We must consider the policy as a whole and construe its language in context, rather than interpreting one provision in isolation. (*Employers Reinsurance Co. v. Superior Court* (2008) 161 Cal.App.4th 906, 919.) Construing the territorial limits of the Truckers Conditions by reference to the preceding coverage provisions they apply to, we conclude that the policy is not reasonably susceptible to the interpretation advanced by the Aguilar parties.

Our holding is consistent with the decision in *Jones v. State Farm Mutual Automobile Ins. Co.* (2004) 268 Va. 396 (601 S.E.2d 645). In that case, the plaintiffs sustained physical injuries in a motor vehicle accident in St. Maarten (in the Netherlands Antilles), but incurred medical expenses in both St. Maarten and the United States. (*Id*. at p. 398.) Their automobile insurance policies each had similar territorial limitations, including one that limited coverage " 'to accidents and losses which occur . . . [w]ithin the policy territory' "—which the policy defined as the United States, its territories and possessions, Puerto Rico, or Canada. (*Id*. at p. 398, fn. 1.) The plaintiffs conceded that these territorial limitations were clear and unambiguous, but argued that there was coverage because some of their medical expenses were incurred in the United States. (*Id*. at p. 400.) However, the Virginia Supreme Court rejected this argument on the ground that it would "alter the terms of the insurance contract by judicial fiat and arbitrarily add to the policy additional and unmeasured insurance risks involved for driving in

9

St. Maarten or any other foreign country or territory which is not a part of the insurance contract." (*Ibid*.)

We agree with this holding. "Territorial limitations are ubiquitous to the insurance industry as a means of allowing the insurer to make actuarial assessments of policy risks." (Marchitelli, *Construction and Application of Insurance Policies' Coverage Territory Clauses Excluding Occurrences Within or Without United States* (2016) 10 A.L.R.7th Art. 7.) Extending the plain language of USIC's policy to an accident occurring outside the coverage territory in a foreign country would expose it to risks not contemplated by the contract of insurance.

In sum, the plain meaning of the policy is that the Liability Coverage does not apply to an accident that occurred in Mexico. The mere fact that Aguilar ultimately died in a hospital in the United States does not trigger Liability Coverage for an accident that occurred outside the defined coverage territory. The insured "could not reasonably have expected coverage from this policy for liability arising out of a vehicular collision in Mexico." (*Foremost Ins. Co. v. Eanes* (1982) 134 Cal.App.3d 566, 572 [enforcing similar territorial coverage provision].)

B.      *No Coverage Under MCS-90 Endorsement*

The Aguilar parties alternatively contend that there is coverage under the MCS-90 endorsement. They assert that the Motor Carrier Act of 1980 and the implementing regulations require that the MCS-90 endorsement apply to foreign commerce, and that the endorsement is not limited to negligence occurring in the United States. Once again, we disagree.

The Motor Carrier Act of 1980 and its implementing regulations require motor carriers to demonstrate that they are in some way insured against damage they cause. (*Castro v. Budget Rent-A-Car System, Inc.* (2007)

10

154 Cal.App.4th 1162, 1175, fn. 7 (*Castro*).)  A motor carrier can fulfill its responsibility by (1) a federal form MCS-90 endorsement attached to its insurance policy; (2) a surety bond; or (3) self-insurance.  (*Ibid*.)  If the motor carrier chooses the form MCS-90 endorsement, it must use the form prescribed by federal regulations.  (49 C.F.R. § 387.15.)  The primary purpose of the MCS-90 endorsement is to assure that injured members of the public will be able to obtain judgment from negligent interstate carriers.  (*Castro*, at p. 1175, fn. 7.)  "Federal law applies to the operation and effect of the MCS-90 endorsement."  (*Century-National Ins. Co. v. Global Hawk Ins. Co.* (2012) 203 Cal.App.4th 1458, 1464 (*Global Hawk*).)

As the trial court noted, the MCS-90 endorsement explicitly states that "all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and company."  Thus, the provision of the Truckers Conditions limiting the coverage territory remains in effect under the MCS-90 endorsement, unless the endorsement provides otherwise.  (See *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 50, fn. 4 [endorsement controls in case of conflict between it and body of policy].)

Nothing in the MCS-90 endorsement expands coverage beyond the rest of the policy's coverage territory.  By its terms, the standard MCS-90 endorsement in the USIC policy only applies to liability resulting from "negligence in the operation, maintenance or use of motor vehicles *subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 . . . .*"  (Italics added.)  Thus, the endorsement applies only if the transportation was subject to these statutory requirements, which are codified at title 49 United States Code sections 13906 and 31139.

The Fifth Circuit has squarely ruled "that [United States Code] Section 31139 and the MCS-90 endorsement extend minimum financial responsibility *only* to the portions of transportation by a motor carrier or private carrier *occurring within the United States.*" (*Canal Indem. Co. v. Galindo* (5th Cir. 2009) 344 Fed.Appx. 909, 911 (*per curiam*) (*Canal*), italics added; see also *Lincoln General Ins. Co. v. De La Luz Garcia* (5th Cir. 2007) 501 F.3d 436, 440–442 (*Lincoln General*) [reaching the same conclusion for nearly identical MCS-90B endorsement for motor carrier of passengers]; *Lyles v. FTL Ltd., Inc.* (2018) 339 F.Supp.3d 570, 576 ["a motor vehicle is not subject to" these financial responsibility requirements "if it is involved in an accident while traveling outside of the United States"].)

In *Canal*, the Fifth Circuit found no coverage under endorsement MCS-90 for a vehicle accident that occurred in Mexico, and agreed with the reasoning of the magistrate and district court reaching the same result. (*Canal, supra*, 344 Fed.Appx. at p. 911; see also *Canal Indem. Co. v. Galindo* (W.D. Tex., Feb. 2, 2009, No. 2:07-CV-070) 2009 WL 10669138 [magistrate's report and recommendation]; *Canal Indem. Co. v. Galindo* (W.D. Tex., March 25, 2009, No. DR-07-CV-070-AML/DG) 2009 WL 10669159 [district court order accepting magistrate's report and recommendation].) The Aguilar parties cite no contrary authority.

As the Fifth Circuit concluded, this conclusion is compelled by the plain language of the controlling federal statute. Title 49 of the United States Code, section 31139(b)(1) provides:

> "The Secretary of Transportation shall prescribe regulations to require minimum levels of financial responsibility . . . for the transportation of property by motor carrier or motor private carrier . . . *in the United States* between a place in a State and–

12

"(A) a place in another State;

"(B) another place in the same State through a place outside of that State; or

"(C) a place outside the United States."

By its terms, this statute applies only to the portion of any such transportation "in the United States." (49 U.S.C. § 31139(b)(1).) Another provision of the statutory scheme similarly provides:

"The Secretary [of Transportation] . . . [has] jurisdiction . . . over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both are transported by motor carrier–

"(1) between a place in–

"(A) a State and a place in another State;

"(B) a State and another place in the same State through another State;

"(C) the United States and a place in a territory or possession of the United States *to the extent the transportation is in the United States*;

"(D) the United States and another place in the United States through a foreign country *to the extent the transportation is in the United States*; or

"(E) the United States and a place in a foreign country *to the extent the transportation is in the United States*." (49 U.S.C. § 13501, italics added.)

The plain meaning of these statutory provisions is that the financial responsibility requirements of the Motor Carrier Act of 1980 do not apply to transportation occurring outside the United States. Because the MCS-90

13

endorsement applies only to motor carrier transportation subject to these financial responsibility requirements, it does not cover an accident occurring outside the United States. (*Canal*, *supra*, 344 Fed.Appx. at p. 911; see also *Lincoln General*, *supra*, 501 F.3d at pp. 440–442.) We are bound by federal law in construing the MCS-90 endorsement. (*Global Hawk*, *supra*, 203 Cal.App.4th at p. 1464.) We must therefore conclude that the MCS-90 endorsement provides no coverage for an accident that occurred in Mexico.

DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal.

BUCHANAN, J.

WE CONCUR:

O'ROURKE, Acting P. J.

IRION, J.

14